UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DIARIO EL PAIS, S.L. and PRISACOM, S.A.,

Plaintiffs,

v.

THE NIELSEN COMPANY (US), INC.,

Defendant.

07-CV-11295 (HB)

---

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS THE COMPLAINT BY
## DEFENDANT THE NIELSEN COMPANY (US), INC.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Defendant The Nielsen Company (US), Inc.*

Of Counsel:

Leslie Gordon Fagen
Aidan Synnott
William J. Taylor, Jr.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................1

THE ALLEGATIONS.............................................................................2
    A.   The Parties .........................................................................2
    B.   The Prisacom/Netratings Contract.......................................3
    C.   The Netratings System.........................................................4
    D.   March 2007: Netratings Updates and Improves Its Measurement
        System....................................................................6
    E.   Reports of Errors in Elpais.com Audience Estimates.................6
    F.   The Present Action ..............................................................8

ARGUMENT.......................................................................................8

I.  THE COMPLAINT AND THE GOVERNING CONTRACT SHOW
    THAT PLAINTIFFS CANNOT STATE A CLAIM AGAINST NIELSEN ..............8
    A.   The Contract Demonstrates that Nielsen Was Not the Relevant
        Actor Here ..........................................................................9
    B.   The *Clark-Fitzpatrick* Rule Precludes Plaintiffs' Tort Claims.................11
    C.   The Contract's Limitation of Liability
        Clause Bars Plaintiffs' Negligence Claims.................................14

II.  PLAINTIFFS' TORT CLAIMS ALLEGING INJURY FROM DEFENDANTS'
    STATEMENTS SHOULD BE DISMISSED BECAUSE SUCH  STATEMENTS
    ARE CONSTITUTIONALLY-PROTECTED OPINION .........................15

III.  PLAINTIFFS HAVE NOT PLEADED FACTS SUFFICIENT TO STATE ANY OF
    THEIR ALLEGED CLAIMS...........................................................18
    A.   Each of Plaintiffs' Tort Claims Fails Because Plaintiffs Have
        Failed to Plead Actual Malice.................................................19
    B.   The Trade Libel Claim Fails Because Plaintiffs Have Failed
        Adequately to Allege Special Damages ...................................20
    C.   The Complaint Fails To State a Claim for Tortious Interference
        with Prospective Economic Advantage...................................22
    D.   The Complaint Fails to State a Claim for Negligent
        Misrepresentation ...............................................................24

CONCLUSION....................................................................................25

# TABLE OF AUTHORITIES

Page(s)

### CASES

*600 West 115th Street Corp.* v. *Von Gutfeld*,
603 N.E.2d 930 (N.Y. 1992).............................................................................16

*Abbott* v. *Harris Publ'ns, Inc.*,
No. 97 Civ. 7648 (JSM), 1998 WL 849412 (S.D.N.Y. Dec. 4, 1998) ...................15

*Amadasu* v. *Bronx Lebanon Hosp. Ctr.*,
No. 03 Civ. 6450 (LAK) (AJP), 2005 WL 121746 (S.D.N.Y. Jan. 21, 2005),
*report & recommendation adopted*, No. 03 Civ. 6450 (LAK), 2005 WL
954916 (S.D.N.Y. Apr. 26, 2005), *aff'd*, 225 Fed. Appx. 32, No. 05-3613-CV,
2007 WL 1560092 (2d Cir. May 30, 2007) ..........................................................20

*Bell Atl. Corp.* v. *Twombly*,
127 S. Ct. 1955 (2007)................................................... 10, 18-20, 24

*Berwick* v. *New World Network Int'l*,
No. 06 Civ. 2641 (JGK), 2007 WL 949767 (S.D.N.Y. Mar. 28, 2007) ...........21-22

*Bishop* v. *Porter*,
No. 02 Civ. 9542(JSR)(GWG), 2003 WL 21032011 (S.D.N.Y. May 8, 2003) ......19

*Clark-Fitzpatrick, Inc.* v. *Long Island R.R. Co.*,
516 N.E.2d 190 (N.Y. 1987)......................................................8-9, 12-13

*Computech Int'l, Inc.* v. *Compaq Computer Corp.*, No. 02 Civ. 2628, 2002 WL
31398933 (S.D.N.Y. Oct. 24, 2002) ........................................................20

*Compuware Corp.* v. *Moody's Investors Servs., Inc.*,
499 F.3d 520 (6th Cir. 2007) ........................................................17

*Drug Research Corp.* v. *Curtis Publishing Co.*,
166 N.E.2d 319 (N.Y. 1960).......................................................20, 22

*Duane Reade, Inc.* v. *Clark*,
No. 107438/03, 2004 WL 690191 (N.Y. Sup. Ct. Mar. 31, 2004) .........................16

*Feick* v. *Fleener*,
653 F.2d 69 (2d Cir. 1981) ........................................................10-11

*Gruntal & Co.* v. *San Diego Bancorp*, No. 94 Civ. 5366 (DC),1996 WL 343079
(S.D.N.Y. June 21, 1996) ........................................................23

ii

Page(s)

*Gucci Am., Inc.* v. *Duty Free Apparel, Ltd.*,
    277 F. Supp. 2d 269 (S.D.N.Y. 2003) ........................................................... 20-21

*Henneberry* v. *Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423 S.D.N.Y. 2006) ...................... 23-24

*Henneberry* v. *Sumitomo Corp. of Am.*,
    No. 04 Civ. 2128 (PKL), 2005 WL 991772 (S.D.N.Y. Apr. 27, 2005) ..................... 15-16, 22

*Hustler Magazine* v. *Falwell*,
    485 U.S. 46 (1988) ........................................................................................ 16

*Immuno AG* v. *Moor-Jankowski*,
    567 N.E.2d 1270 (N.Y. 1991) ........................................................................ 15

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007) ............................................................................ 19

*In re Xethanol Corp. Sec. Litig.*,
    No. 06 Civ. 10234 (HB), 2007 WL 2572088 (S.D.N.Y. Sept. 7, 2007) ................................ 19

*Iqbal* v. *Hasty*,
    490 F.3d 143 (2d Cir. 2007) ......................................................................... 18-19

*JP Morgan Chase Bank* v. *Winnick*,
    350 F. Supp. 2d 393 (S.D.N.Y. 2004) ............................................................ 23, 24

*Kasada, Inc.* v. *Access Capital, Inc.*,
    No. 01 Civ. 8893 (GBD), 2004 WL 2903776 ....................................................... 24

*Kim* v. *Dvorak*,
    658 N.Y.S.2d 502 (App. Div. 1997) ................................................................. 16

*Kramer* v. *Pollock-Krasne Found.r*,
    890 F. Supp. 250 (S.D.N.Y. 1995) ................................................................. 22

*LaSalle Bank Nat'l Ass'n* v. *Citicorp Real Estate Inc.*,
    No. 02 Civ. 7868 (HB), 2003 WL 1461483 (S.D.N.Y. Mar. 31, 2003) ........................... 12, 24

*Levin* v. *McPhee*,
    917 F. Supp. 230 (S.D.N.Y. 1996), *aff'd*, 119 F.3d 189 (2d Cir. 1997) ................................ 16

*Matusovsky* v. *Merrill Lynch*,
    186 F. Supp. 2d 397 (S.D.N.Y. 2002) ............................................................ 10-11

*McNally* v. *Yarnall*,
    764 F. Supp. 838 (S.D.N.Y. 1991) ................................................................. 20

**Page(s)**

*Menaldi* v. *Pay-Per-View Network, Inc.*,
No. 97 Civ. 6451 (HB), 1998 WL 230994 (S.D.N.Y. May 5, 1998), *aff'd sub nom. Menaldi* v. *Group W Broad., Inc.*, 182 F.3d 900 (2d Cir. 1999) .............................. 13-14

*Milkovich* v. *Lorain Journal Co.*,
497 U.S. 1 (1990)................................................................................................15

*Mr. Chow of N.Y.* v. *Ste. Jour Azur S.A.*,
759 F.2d 219 (2d Cir. 1985) ..............................................................................16

*New York Times Co.* v. *Sullivan*,
376 U.S. 254 (1964)...........................................................................................20

*Official Comm. of Unsecured Creditors* v. *Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688 (WHP), 2002 WL 362794 (S.D.N.Y. Mar. 6, 2002) .....................14

*Phoenix Four, Inc.* v. *Strategic Res. Corp.*,
No. 05 Civ. 4837 (HB), 2006 WL 399396 (S.D.N.Y. Feb. 21, 2006).....................................23

*Porter* v. *Property Damage Control Group, Inc.*,
No. 03 CV 5972, 2007 WL 2907403 (E.D.N.Y. Sept. 28, 2007)...........................13

*Rapoport* v. *Asia Elecs. Holding Co.*,
88 F. Supp. 2d 179 (S.D.N.Y. 2000) ...............................................................10-11

*RBS Holdings, Inc.* v. *Wells Fargo Century, Inc.*,
485 F. Supp. 2d 472 (S.D.N.Y. 2007) ...................................................................3

*Roth* v. *Jennings*,
489 F.3d 499 (2d Cir. 2007) ..............................................................................11

*Sazerac Co.* v. *Falk*,
861 F. Supp. 253 (S.D.N.Y. 1994) .....................................................................10

*Search King, Inc.* v. *Google Tech., Inc.*,
No. CIV-02-1457-M, 2003 WL 21464568 (W.D. Okla. May 27, 2003) ........................ 16-17

*Sel-Leb Mktg., Inc.* v. *Dial Corp.*,
No. 01 Civ. 9250 (SHS), 2002 WL 1974056 (S.D.N.Y. Aug. 27, 2002) ...................................3

*Smith* v. *Local 819 I.B.T. Pension Plan*,
291 F.3d 236 (2d Cir. 2002) ..............................................................................19

*Sommer* v. *Fed. Signal Corp.*,
593 N.E.2d 1365 (N.Y. 1992).........................................................................12, 14

*TD Waterhouse Investor Servs., Inc.* v. *Integrated Fund Servs., Inc.*,
No. 01 Civ. 8986 (HB), 2003 WL 42013 (S.D.N.Y. Jan. 6, 2003) ..........................................13

**Page(s)**

*Themed Rests., Inc.* v. *Zagat Survey, LLC,*
    801 N.Y.S.2d 38 (App. Div. 2005)...................................................................... 16-17

*Themed Rests., Inc.* v. *Zagat Survey, LLC,* 781 N.Y.S.2d 441, 448-50 (Sup. Ct.
    2004), *aff'd,* 801 N.Y.S.2d 38 (App. Div. 2005) ......................................................20

*United States ex rel. Evergreen Pipeline Constr. Co.* v. *Merritt Meridain Constr.*
    *Corp.,* 95 F.3d 153 (2d Cir. 1996) ..........................................................................13

*Universal Licensing Corp.* v. *Paolo del Lungo S.P.A.,*
    293 F.3d 579 (2d Cir. 2002) .....................................................................................11

*Williams* v. *New York City Housing Auth.,*
    No. 05 Civ. 2750 (DC), 2007 WL 4215876 (S.D.N.Y. Nov. 30, 2007)...................18

*Yak* v. *Bank Brussels Lambert, BBL,*
    252 F.3d 127 (2d Cir. 2001) .......................................................................................3


**STATUTES**

28 U.S.C. § 1332...........................................................................................................11

Defendant The Nielsen Company (US), Inc. ("Nielsen") respectfully submits this memorandum of law in support of its motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint filed by plaintiffs Diario El Pais, S.L. ("El Pais") and Prisacom, S.A. ("Prisacom") (together, "Plaintiffs") for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

The pleading in this case is an exercise in evasion. A written contract governs here, but Plaintiffs pretend it does not exist and bring this action in tort. Netratings Spain, S.L. Unipersonal ("Netratings"), a Spanish company, has provided Plaintiffs with all the services at issue in this litigation, but El Pais and Prisacom have chosen to sue only Nielsen, a New York corporation with which they have no relevant contractual or other relationship.

Plaintiffs have done all this in a rather blatant attempt to avoid both the settled legal principles restricting tort claims in the presence of a contract and the clear limitations on liability contained in the governing contract here. These evasionary tactics are not permissible, however, and cannot withstand Nielsen's motion to dismiss.

Instead, under the law, the Court should consider not only the allegations in the Complaint, but also the terms and provisions of the governing contract. Together, these two documents demonstrate Plaintiffs' utter failure to state a claim. The attempt here to transform a potential contract claim against Netratings into a tort claim against Nielsen simply cannot survive the most basic scrutiny on this motion to dismiss.

Moreover, Plaintiffs' claims also run afoul of the free-speech protections of the U.S. and New York Constitutions. And Plaintiffs fail to plead sufficient facts adequately to allege any of their claims.

For these reasons, discussed in detail below, the Complaint should be dismissed in its entirety.

## THE ALLEGATIONS

This statement is based on the allegations in the Complaint, which we take as true solely for purposes of this motion ("Cplt.," a copy of which is attached as Exhibit A to the Declaration of William J. Taylor, Jr. ("Taylor Decl.")) as well as other documents that the Court may properly consider on this motion to dismiss.

### A.    The Parties

El Pais and Prisacom are Spanish corporations with their principal places of business in Madrid, Spain. (Cplt. ¶ 19.) El Pais is the owner and publisher of *El Pais*, Spain's most widely read daily newspaper with a circulation of approximately 430,000 copies per day. (Cplt. ¶¶ 1, 22.) Prisacom, through an agreement with El Pais, owns and operates elpais.com, the online version of *El Pais*. (Cplt. ¶¶ 1, 23.) Both El Pais and Prisacom are part of Promotora de Informaciones, S.A. ("Grupo Prisa"), a Spanish media conglomerate. (Cplt. ¶ 1.)

Nielsen is a New York corporation with its principal place of business in New York, New York. (Cplt. ¶ 19.) Nielsen is a subsidiary of the Nielsen Company B.V., a Netherlands corporation and the world's leading provider of marketing

information, audience measurement, and business media products and services. (Cplt. ¶¶ 19, 24.).

Netratings—neither named as a defendant nor even mentioned in the complaint—is a Spanish company with its principal place of business in Madrid.  (Taylor Decl. Ex. B. at 1.)  Netratings is a wholly-owned subsidiary of Netratings Australia Pty Limited; through multiple levels of corporate organization, Nielsen is ultimately a parent company of Netratings.  Thus, while Netratings is a part of Nielsen group of companies, it is a wholly separate entity from the defendant in this litigation.

Netratings is the leading provider of internet audience estimates in Spain. (Cplt. ¶ 2; Taylor Decl. Ex. B.)

**B.    The Prisacom/Netratings Contract**

Although Plaintiffs fail to allege it in their Complaint, a key document in this case is a service contract between Prisacom and Netratings dated July 26, 2005, entered into in Madrid (the "Prisacom/Netratings Contract" or the "Contract," attached at Taylor Decl. Ex. B).[1]  The relationship at issue in this case—the provision of "Internet measurement services" to Plaintiffs—is governed by this Contract.

---

[1]    Because the Prisacom/Netratings Contract, which established and governs the relationship at issue in this dispute, is "integral to the complaint," the Court may properly consider it on this motion.  *Yak* v. *Bank Brussels Lambert, BBL*, 252 F.3d 127, 130-31 (2d Cir. 2001); *see RBS Holdings, Inc.* v. *Wells Fargo Century, Inc.*, 485 F. Supp. 2d 472, 476-77 (S.D.N.Y. 2007); *Sel-Leb Mktg., Inc.* v. *Dial Corp.*, No. 01 Civ. 9250 (SHS), 2002 WL 1974056, at *2-3 (S.D.N.Y. Aug. 27, 2002).  That Plaintiffs have not attached, incorporated, or specifically referenced the Contract in the Complaint changes nothing.  *See Yak*, 252 F.3d at 131 ("Carefully avoiding all mention of the Consulting Agreements does not make them any less integral to [plaintiff's] complaint.").

Under the Prisacom/Netratings Contract, Netratings agrees to "provide Internet measurement services" for Spain to Prisacom, and Prisacom agrees to pay an annual fee of € 31,518.75 to Netratings. (Taylor Decl. Ex. B. at 1; *id.* ¶ 15.1.) The Contract also expressly limits any potential liabilities for Netratings:

> NETRATINGS shall not be liable in any event for indirect, special, incidental, consequential, punitive or confidence damages, including, *inter alia*, loss of profits, savings or income, be they of a contractual, extracontractual or other nature (including negligence, product liability and objective liability) . . . .

(*Id.* ¶ 9.3.) "[T]he total maximum liability of NETRATINGS, under any circumstance, shall not exceed the amount actually paid by [Prisacom] to NETRATINGS under the contract for twelve months prior to the date on which the case arises." (*Id.* ¶ 9.4.) And the Contract also makes clear that there are some inherent limitations to the Netratings system, and that the reliability of all information provided through the Netratings system necessarily "corresponds to the[se] limitations." (*Id.* ¶ 9.1.)

Finally, the Prisacom/Netratings Contract contains a merger clause and a no-oral-modification clause and so "the Contract constitutes the full agreement between the parties" and "may not be amended except by written instrument." (*Id.* ¶¶ 13.6, 13.7.)

## C.     The Netratings System

Netratings calculates internet ratings based on a statistical analysis of data collected from a panel of internet users. (Cplt. ¶ 25; Taylor Decl. Ex. B.) Netratings, through proprietary software, tracks the member's internet activity. (Cplt. ¶ 26; Taylor Decl. Ex. B.) Netratings takes the data collected from the panel and uses a proprietary methodology to produce a report ranking the websites by audience size in each

geographic location.  (Cplt. ¶ 27; Taylor Decl. Ex. B.)  Netratings publishes its audience

estimates to its clients—including Prisacom—monthly.  (Cplt. ¶¶ 27-28; Taylor Decl. Ex.

B.)

       In measuring audience size, Netratings seeks to provide the most accurate

estimate possible of the number of "unique users" who purposely view each website page

during any given month.  (Cplt. ¶ 27; Taylor Decl. Ex. B.)  Thus, to the extent they can

be identified as such, Netratings does not credit automated calls to the unique user count

that forms the basis of its audience estimates and website rankings.  (Cplt. ¶ 52; Taylor

Decl. Ex. B.)

       RSS, or "really simple syndication," is a format commonly used by online

media to syndicate news headlines to other websites.  For example, other websites can

subscribe to elpais.com's RSS feed and thus publish automatically updating headlines

from elpais.com.  To receive these updated headlines, the receiving website will

generally place automated calls to the elpais.com RSS page.  To the extent possible,

Netratings attempts to exclude such automated calls from its audience estimates.  (Cplt. ¶

52; Taylor Decl. Ex. B.)

       Prior to March 2007, the panel from which Netratings collected unique

user data in Spain consisted of 4,000 users using the internet from their homes.  (Cplt.

¶ 4; Taylor Decl. Ex. B.)  Those who connected to the internet from work were not

measured and thus were not included in any audience measurements.  (Cplt. ¶ 38.)  Under

this pre-March 2007 system, Netratings estimated that elpais.com grew its audience from

1.76 million unique users in August 2007 to 2.37 million unique users in February 2007.

(Cplt. ¶ 4; Taylor Decl. Ex. B.)  And, based on these estimates, Netratings ranked

elpais.com as the Number 2 media website in Spain over this time period (except for December 2006, when it ranked Number 3).  (Cplt. ¶ 4; Taylor Decl. Ex. B.)

**D.     March 2007: Netratings Updates and Improves Its Measurement System**

In March 2007, as part of its continued effort to improve its services to its clients, Netratings made two significant upgrades to its internet measurement system in Spain.  *First*, it increased the size of its panel of home users from 4,000 to 16,000; and added 1,000 work users to the panel.  (Cplt. ¶ 41; Taylor Decl. Ex. B.)  *Second*, in order to further increase the accuracy and reliability of its ratings, Netratings also updated the methodology used to convert the data collected from users into audience estimates. (Cplt. ¶ 41; Taylor Decl. Ex. B.)

After these March 2007 upgrades took effect, both elpais.com, as well as its competitors, experienced growth in their estimated audience sizes.  (Cplt. ¶ 46.) Elpais.com, however, experienced larger growth, and from March 2007 through May 2007, it narrowed the gap between itself and the market leader among Spanish media websites, el mundo.es.  (Cplt. ¶ 48.)  Then, in July 2007, Netratings reported that, based on its measurement of audience estimates, elpais.com had become the Number 1 media website in Spain as of June 2007.  (Cplt. ¶ 48; Taylor Decl. Ex. B.)

**E.     Elimination of Errors in Elpais.com Audience Estimates**

On September 21, 2007, reports surfaced in the Spanish media that certain automated calls had been included in the audience estimates for elpais.com, unintentionally inflating those estimates by as much as 20%.  (Cplt. ¶ 51.)  In particular, it was reported that automated calls to elpais.com's so-called RSS page were included in the audience estimates for elpais.com.  (Cplt. ¶¶ 51-52.)

In its continuing effort to publish the most accurate and reliable data possible, Netratings quickly reacted to these reports of automated calls in the elpais.com audience estimates.  Starting on September 21 and continuing over the next several days, representatives of Netratings met with representatives of Prisacom in-person and over the phone to discuss the situation.  (Cplt. ¶¶ 54-69; Taylor Decl. Ex. B.)  Over the course of these meetings, Netratings informed Prisacom that its internal review confirmed what had been reported in the media—that, due to the unintended inclusion of automated calls to elpais.com's RSS page, upwards of one million users had been improperly added to the audience estimate for elpais.com.  (Cplt. ¶¶ 54-69; Taylor Decl. Ex. B.)  Netratings also made clear to Prisacom that when it published its audience estimates and rankings for August 2007, it intended to correct the estimates for elpais.com to exclude the automated calls.  (Cplt. ¶¶ 54-69; Taylor Decl. Ex. B.)

On September 26, 2007, Netratings published those internet audience estimates for August 2007.  (Cplt.¶¶ 69-70; Taylor Decl. Ex. B.)[2]  They showed a reduction of 1.8 million unique users to elpais.com.  (Cplt. ¶ 62.)  And in the August 2007 ranking of Spanish media websites, elpais.com fell from Number 1 to Number 3.  (Cplt. ¶ 62.)

Since September, Netratings has continued to publish internet audience estimates excluding the automated calls to elpais.com's RSS page.  It has also revised all

---

[2]    Due to an administrative oversight, Netratings temporarily released this information the day before, on September 25, before Prisacom had a final opportunity to review the data before publication.  (Cplt. ¶ 67; Taylor Decl. Ex. B.)  After recalling the data, however, Netratings met once again with Prisacom, apologized for the administrative oversight, and notified Prisacom that it next would officially publish this same data.  (Cplt. ¶ 69; Taylor Decl. Ex. B.)

past data impacted by the inclusion of these automated calls. (Cplt. ¶¶ 12-13; Taylor Decl. Ex. B.)

**F.    The Present Action**

Despite the clear contractual provisions governing the publication of Netratings audience estimates and rankings, Plaintiffs have not sued Netratings or sought relief under the Prisacom/Netratings Contract.  Instead, ignoring the requirements and limitations of the Contract, Plaintiffs sued Nielsen, a separate company several levels removed from Netratings in the corporate organization.  Contending that "Nielsen has violated New York law in connection with its publication of false and misleading estimations of the audience of elpais.com," the Complaint asserts claims for trade libel (Count One), tortious and negligent interference with prospective interference with prospective economic advantage (Count Two), and negligent misrepresentation (Count Three).  Plaintiffs allege in the Complaint that New York law governs their tort claims. For purposes of this motion to dismiss alone we accept the allegations as true.

Nielsen now moves to dismiss for the reasons discussed below.

## ARGUMENT

### I.

### THE COMPLAINT AND THE GOVERNING CONTRACT SHOW THAT PLAINTIFFS CANNOT STATE A CLAIM AGAINST NIELSEN

The Prisacom/Netratings Contract contains two independent bars to the sort of tort claims El Pais and Prisacom allege here. *First*, the rule laid down in *Clark-Fitzpatrick, Inc.* v. *Long Island Rail Road Co.* and its progeny makes clear that no tort liability can be had "unless a legal duty independent of the contract itself has been

violated." 516 N.E.2d 190, 193 (N.Y. 1987). *Second*, as discussed above, the Contract

contains a limitation of liability clause that expressly bars claims sounding in negligence

Plaintiffs have attempted to evade these restrictions by pretending the

Contract does not exist, ignoring their relationship with Netratings, and suing Nielsen in

tort for the precise activities that Netratings was contractually obligated to perform. The

law is clear, however, that these kinds of tactics cannot prevent a motion to dismiss.

Properly considering both the allegations in the Complaint and the terms of

Prisacom/Netratings Contract, the Court should reject this improper attempt to evade

contractual restrictions and should dismiss El Pais and Prisacom's claims in their entirety.

## A.    The Contract Demonstrates that Nielsen Was Not the Relevant Actor Here

The Prisacom/Netratings Contract shows that—despite the efforts made in

the Complaint to simply imagine away the Contract and, indeed, the entire corporate

structure of a multinational conglomerate—Plaintiffs have no claim against Nielsen. The

Contract makes plain that the relationship at issue in this dispute is instead between

Prisacom and Netratings, two Spanish companies headquartered in Madrid. *See supra*

pp. 3-4. Nielsen, the named defendant in this action, is a wholly separate corporation

from Netratings. And Nielsen has no contractual or other relationship with Plaintiffs

concerning the services that are at issue here. For this reason alone, the motion to dismiss

should be granted.

Plaintiffs allege in the Complaint that Prisacom is a client of Nielsen and

that it is through this client relationship that Plaintiffs received the Netratings audience

estimates that are the subject of this dispute. (Cplt. ¶ 28.) But these allegations are

contradicted by the plain terms of the Prisacom/Netratings Contract. And nowhere in the

Complaint do El Pais and Prisacom plead, as they must, any facts explaining away this Contract or alleging that, despite the Contract, Nielsen was the true actor here. *See, e.g.,* *Bell Atl. Corp.* v. *Twombly*, 127 S. Ct. 1955, 1964-65, 1968-69 (2007); *see also infra* pp. 18-19.

As discussed above, the Prisacom/Netratings Contract makes clear that Prisacom and Netratings are the parties to the Contract and that Prisacom is the "CLIENT" of Netratings. *See supra* pp. 3-4. It states that Netratings "shall provide Internet measurement services to [Prisacom], by granting a usage license," that "both Parties agree that the relationship shall be governed by" the Contract, and that the Contract "constitutes the full agreement between the parties." (Taylor Decl. Ex. B at 1; *id.* ¶ 13.7.) And it is signed by a representative of Prisacom, a representative of Netratings, and no one else. (*Id.* at 10.) Simply put, it is the Prisacom/Netratings Contract by which Plaintiffs receive the Netratings "Internet measurement services" at issue in this case; Nielsen is not a party to this Contract.

The law is clear that under these circumstances—*i.e.*, where the allegations in a Plaintiff's Complaint are contradicted by another document or documents that the Court may properly consider on a motion to dismiss—"the documents control and this Court need not accept as true the allegations in the . . . complaint." *Rapoport* v. *Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000); *see, e.g., Feick* v. *Fleener*, 653 F.2d 69, 75 (2d Cir. 1981); *Matusovsky* v. *Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002); *Sazerac Co.* v. *Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994).

In *Matusovsky* v. *Merrill Lynch*, for example, Judge Marrero granted Merrill Lynch's Rule 12(b)(6) motion to dismiss based on its review of the terms of a

written release between the parties and submitted with Merrill's motion, which, the court

found, contradicted plaintiff's allegations in the complaint that this release was invalid.

186 F. Supp. 2d at 400-01.  Similarly, in *Rapoport* v. *Asia Electronics Holding Co.*,

Judge Edelstein "closely examined the substance" of two documents upon which

plaintiffs' claims relied but which were not attached to the complaint, found that "the

documents contradict[ed] Plaintiffs' allegations," and, for this reason, granted

defendants' motion to dismiss.  88 F. Supp. 2d at 184.[3]

Thus, because the Prisacom/Netratings Contract "show[s] on [its] face

absence of any grounds for relief," the Complaint should be dismissed.  *Feick*, 653 F.2d

at 75.[4]

**B.    The *Clark-Fitzpatrick* Rule Precludes Plaintiffs' Tort Claims**

There is, of course, good reason why Plaintiffs have attempted the charade

of ignoring the Prisacom/Netratings Contract and suing Nielsen instead of Netratings.

---

[3]    The Second Circuit's recent decision in *Roth* v. *Jennings*, 489 F.3d 499 (2d Cir. 2007), is not to the contrary.  Unlike in *Roth*, the Court here need only consider "what" the Contract states—*i.e.*, that Netratings, not Nielsen, is the entity contractually obligated to provide the "Internet measurement services" at issue in this litigation.  The "truth" of the Contract is, of course, not in question.  *See id.* at 510-11 (reaffirming the *Matusosky* and *Rapoport* decisions).

[4]    A federal court has no subject-matter jurisdiction over this Spanish law dispute between Spanish corporations covering services to be delivered in Spain.  Diversity jurisdiction does not extend that far.  *See* 28 U.S.C. § 1332  Thus, even if Plaintiffs were to attempt to amend their pleading and name Netratings as a defendant, the Complaint would still be subject to dismissal under Rule 12(b).  *See Universal Licensing Corp.* v. *Paolo del Lungo S.P.A.*, 293 F.3d 579, 581 (2d Cir. 2002) ("[D]iversity is lacking . . . where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens.")

Under the New York Court of Appeals's seminal decision in *Clark-Fitzpatrick, Inc.* v. *Long Island Rail Road Co.*, the Contract plainly precludes Plaintiffs' tort claims.

Under New York law, "[i]t is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc.* v. *Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987); *see, e.g.*, *LaSalle Bank Nat'l Ass'n* v. *Citicorp Real Estate Inc.*, No. 02 Civ. 7868 (HB), 2003 WL 1461483, at *3 (S.D.N.Y. Mar. 31, 2003); *Sommer* v. *Fed. Signal Corp.*, 593 N.E.2d 1365, 1368-69 (N.Y. 1992). "The legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Clark-Fitzpatrick*, 516 N.E.2d at 194; *see LaSalle*, 2003 WL 1461483, at *3.

Here, Plaintiffs have not properly alleged the violation of any legal duty independent of the obligations created by the Prisacom/Netratings Contract.

In their Complaint, Plaintiffs bring three tort claims against Nielsen: for trade libel, tortious and negligent interference with prospective economic advantage, and negligent misrepresentation. (Cplt. ¶¶ 80-98.) Each seeks monetary damages from Nielsen for the same alleged behavior—the "publication of false and misleading estimations of the audience of elpais.com." (Cplt. at 1.) The trade libel claim alleges "publication of . . . inaccurate estimates of elpais.com's audience." (Cplt. ¶ 81.) The tortious and negligent interference with economic advantage claim charges Nielsen "with reckless and willful disregard regarding the accuracy of its statistics, data and ratings." (Cplt. ¶ 91.) And the negligent misrepresentation claim accuses Nielsen of "false

representations" of "its estimates of elpais.com's audience and its resultant ranking."
(Cplt. ¶¶ 95, 97.)

"Each of these allegations, however, is merely a restatement, albeit in
slightly different language," of Netratings's obligations under the Prisacom/Netratings
Contract to provide Prisacom with "information about the entire Internet market" for
Spain, and an attempt to accuse Nielsen of violating these obligations. *Clark-Fitzpatrick*,
516 N.E.2d at 194; *see supra* pp. 3-4, 10.  Simply adding the words "negligent,"
"reckless," and "libel" cannot transform the contractual obligations into a tort claim. *See
Clark-Fitzpatrick*, 516 N.E.2d at 194; *TD Waterhouse Investor Servs., Inc.* v. *Integrated
Fund Servs., Inc.*, No. 01 Civ. 8986 (HB), 2003 WL 42013, at *13 (S.D.N.Y. Jan. 6,
2003); *Menaldi* v. *Pay-Per-View Network, Inc.*, No. 97 Civ. 6451 (HB), 1998 WL
230994, at *3 (S.D.N.Y. May 5, 1998), *aff'd sub nom. Menaldi* v. *Group W Broad., Inc.*,
182 F.3d 900 (2d Cir. 1999); *see also Porter* v. *Property Damage Control Group, Inc.*,
No. 03 CV 5972, 2007 WL 2907403, at *10 (E.D.N.Y. Sept. 28, 2007).

Moreover, the damages that Plaintiffs seek under their tort claims against
Nielsen—over € 1 million for "lost advertising revenue"—"were clearly within the
contemplation of the written agreement," which expressly bars such "consequential"
damages for "loss of profits . . . or income." *Clark-Fitzpatrick*, 516 N.E.2d at 194;
(Taylor Decl. Ex. B ¶ 9.3).  Such "restrictions upon damages for breach of contract
claims" cannot be avoided "merely by recasting the breach as a tort." *United States ex
rel. Evergreen Pipeline Constr. Co.* v. *Merritt Meridain Constr. Corp.*, 95 F.3d 153, 162
(2d Cir. 1996).

13

Finally, Plaintiffs' allegations of damage to its "business reputation" cannot support its tort causes of action here. *See Menaldi*, 1998 WL 230994, at *3.

Thus, even if Plaintiffs had (and could) sue the proper party here, the Complaint should be dismissed in its entirety under the *Clark-Fitzpatrick* rule.

## C.    The Contract's Limitation of Liability Clause Bars Plaintiffs' Negligence Claims

In addition, as the New York Court of Appeals has held, "a contractual provision absolving a party from its own negligence will be enforced." *Sommer*, 593 N.E.2d at 1370. Section 9.3 of the Prisacom/Netratings Contract contains just such a clause, stating that:

> NETRATINGS shall not be liable in any event for indirect, special, incidental, consequential, punitive or confidence damages, including, *inter alia*, loss of profits, savings or income, be they of a contractual, extracontractual or other nature (including *negligence*, product liability and objective liability) . . . .

(Taylor Decl. Ex. B ¶ 9.3 (emphasis added)); *see supra* p. 4.

Plaintiffs' claim for negligent misrepresentation—which seeks recovery only for lost income and other consequential damages—would plainly be precluded by this limitation of liability clause. *See, e.g., Official Comm. of Unsecured Creditors* v. *Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688 (WHP), 2002 WL 362794, at *16 (S.D.N.Y. Mar. 6, 2002) (holding that a similar contractual provision barred negligent misrepresentation claim).[5] And, as discussed above, Plaintiffs cannot avoid

---

[5]    If it actually existed under New York law, Plaintiffs' claim for negligent interference with prospective economic advantage would similarly be barred by the Contract's limitation of liability clause. But, as we note below, such a claim is not recognized in New York. *See infra* note 6.

that preclusion by pretending the Prisacom/Netratings Contract does not exist. This Contract simply belies Plaintiffs' bare allegations that Nielsen acted here.

*       *       *       *

For all the above reasons, the Court need examine nothing more on this motion than the Prisacom/Netratings Contract. By itself, that contract makes clear that Plaintiffs' claims should be dismissed—for multiple reasons—under Fed. R. Civ. P. 12(b)(6).

**II.**

**PLAINTIFFS' TORT CLAIMS ALLEGING INJURY FROM DEFENDANTS' STATEMENTS SHOULD BE DISMISSED BECAUSE SUCH STATEMENTS ARE CONSTITUTIONALLY-PROTECTED OPINION**

Plaintiffs' claims should also be dismissed because the allegedly false statements on which they are based constitute opinions and thus enjoy full and absolute constitutional protection.

It is well-settled that "[s]tatements of opinion which do not 'contain a provably false factual connotation' are protected by the U.S. and New York constitutions." *Abbott* v. *Harris Publ'ns, Inc.*, No. 97 Civ. 7648 (JSM), 1998 WL 849412, at *5 (S.D.N.Y. Dec. 4, 1998); *see Milkovich* v. *Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990); *Immuno AG* v. *Moor-Jankowski*, 567 N.E.2d 1270, 1275 (N.Y. 1991). Indeed, the free speech guarantee of the New York Constitution provides even greater protection to expressions of opinion than does the First Amendment. *Immuno AG*, 567 N.E.2d at 1277-78; *see Henneberry* v. *Sumitomo Corp. of Am.*, No. 04 Civ. 2128 (PKL), 2005 WL 991772, at *16 (S.D.N.Y. Apr. 27, 2005).

Thus, New York courts have held time and again that "expressions of opinion, false or not, libelous or not, are constitutionally protected and may not be the subject of private damages actions." *Kim* v. *Dvorak*, 658 N.Y.S.2d 502, 505 (App. Div. 1997) (citing *Steinhilber* v. *Alphonse*, 501 N.E.2d 550, 550 (N.Y. 1986), and *Rinaldi* v. *Holt, Rinehart & Winston, Inc.*, 366 N.E.2d 1299, 1306 (N.Y. 1977)).  Instead, "this constitutional shield requires that assertions of fact, not opinion, form the basis of a claim." *Henneberry*, 2005 WL 991772, at *16 (citing *Brian* v. *Richardson*, 660 N.E.2d 1126, 1129 (N.Y. 1995)).

This analysis, which was developed in the defamation context, applies equally to the claims of trade libel, tortious interference with prospective economic advantage, and negligent representation that Plaintiffs have alleged in this case.  *See, e.g.*, *Themed Rests., Inc.* v. *Zagat Survey, LLC*, 801 N.Y.S.2d 38, 39-40 (App. Div. 2005) (trade libel and negligence); *Duane Reade, Inc.* v. *Clark*, No. 107438/03, 2004 WL 690191, at *10 (N.Y. Sup. Ct. Mar. 31, 2004) (tortious interference); *see also Hustler Magazine* v. *Falwell*, 485 U.S. 46, 56 (1988); *Levin* v. *McPhee*, 917 F. Supp. 230, 242 & n.15 (S.D.N.Y. 1996), *aff'd*, 119 F.3d 189 (2d Cir. 1997).  And the determination of whether a statement constitutes protected expression of opinion or actionable factual representation is a question of law for the Court.  *Mr. Chow of N.Y.* v. *Ste. Jour Azur S.A.*, 759 F.2d 219, 224 (2d Cir. 1985); *600 West 115th Street Corp.* v. *Von Gutfeld*, 603 N.E.2d 930, 934 (N.Y. 1992).

One court has already considered the question at issue here, and held that internet website rankings "constitute opinions protected by the First Amendment" and are protected from tort liability.  *Search King, Inc.* v. *Google Tech., Inc.*, No. CIV-02-1457-

16

M, 2003 WL 21464568, at *2-4 (W.D. Okla. May 27, 2003). Much like this case, the plaintiff in *Search King*, a website operator, alleged that Google had "purposefully and maliciously decreased" the ranking of plaintiff's websites and reduction thereby reduced plaintiff's advertising revenue, which was based on the website rankings. *Id.* at *1-2. Plaintiff brought a claim for tortious interference with contractual relations to attempt to recover this lost revenue, and Google moved to dismiss under Fed. R. Civ. P. 12(b)(6), asserting that it was "immune from tort liability arising out of the devaluation because [its website ranking system] constitute[s] protected speech." *Id.* at *2.

The district court agreed with Google. It found that the although Google's process and methodology for ranking websites was "objective" and "capable of replication," the results of that process—*i.e.*, "the numerical representation of relative significance of a particular web site"—were "fundamentally subjective in nature." *Id.* at *3. Thus, because the website rankings constituted "constitutionally protected opinions," the court dismissed plaintiff's tort action challenging these rankings. *Id.* at *4.

So too here. Plaintiffs have alleged that Netratings's reduction in elpais.com's audience estimates by "more than one million unique visitors" and the downgrading of elpais.com "from the #1 to the #3 position in the rankings" has cost them advertising revenue and damaged their reputation. (Cplt. ¶¶ 74-79.) Plaintiffs' challenge to this result is no different from that rejected in *Search King*. *See also Themed Rests.*, 801 N.Y.S.2d at 39-40 (Zagat survey restaurant rankings constitute constitutionally-protected opinion); *Compuware Corp.* v. *Moody's Investors Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007) (Moody's credit rating constitutes constitutionally-protected opinion).

Accordingly, consistent with the well-reasoned *Search King* opinion, as well as the rest of the relevant case law, the Court should dismiss Plaintiffs' claims as constitutionally invalid.

### III.

### PLAINTIFFS HAVE NOT PLEADED FACTS <u>SUFFICIENT TO STATE ANY OF THEIR ALLEGED CLAIMS</u>

To survive a motion to dismiss, the Supreme Court held last term, plaintiff must present "[f]actual allegations [that are] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp.* v. *Twombly*, 127 S. Ct. 1955, 1965 (2007) (citations and footnote omitted). The Court clarified that the pleading standard is more demanding than was often applied, stating that Fed. R. Civ. P. 8(a) requires "not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. at 1965 n.3. A plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1965. There must be "enough *facts* to state a claim to relief that is plausible on its face." *Id*. at 1974 (emphasis added).

*Twombly* rejected as "best forgotten" the notion that a complaint should not be dismissed unless it appears beyond doubt that a plaintiff "'can prove no set of facts in support of his claim which would entitle him to relief.'" *Id*. at 1968-69 (quoting *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957)). Rather, as the Second Circuit has explained, the complaint is measured against a "plausibility standard," which obligates the pleader "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal* v. *Hasty*, 490 F.3d

143, 158 (2d Cir. 2007); *see also In re Xethanol Corp. Sec. Litig.*, No. 06 Civ. 10234 (HB), 2007 WL 2572088, at *2 (S.D.N.Y. Sept. 7, 2007).  This does not require "a universal standard of heightened fact pleading," *Iqbal*, 490 F.3d at 157, but "it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'"  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1974) (alteration in *Elevator Antitrust Litig.*)  And "'bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations' and will not defeat a motion to dismiss." *Williams* v. *New York City Hous. Auth.*, No. 05 Civ. 2750 (DC), 2007 WL 4215876, at *4 (S.D.N.Y. Nov. 30, 2007); *see Elevator Antitrust Litig.*, 502 F.3d at 51; *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

Plaintiffs have failed to plead sufficient facts to allege any of their claims. Along with the contractual and constitutional bars already discussed, the Complaint should be dismissed in its entirety for this reason as well.

## A.    Each of Plaintiffs' Tort Claims Fails Because Plaintiffs Have Failed to Plead Actual Malice

Even if the Court were to find that the allegedly "false and misleading estimations of the audience of elpais.com" at issue here did not constitute protected opinion, Plaintiffs' tort claims should nevertheless be dismissed because the Complaint fails to plead "actual malice," as required by the federal and state constitutions.[6] *See*

---

[6]    Despite Plaintiffs' assertions in Count Two of the Complaint, there is no claim for negligent interference with prospective economic advantage under New York law. *See Bishop* v. *Porter*, No. 02 Civ. 9542(JSR)(GWG), 2003 WL 21032011, at *12 (S.D.N.Y. May 8, 2003).

*New York Times Co.* v. *Sullivan*, 376 U.S. 254, 279-80 (1964); *Themed Rests., Inc.* v.

*Zagat Survey, LLC*, 781 N.Y.S.2d 441, 448-50 (Sup. Ct. 2004), *aff'd*, 801 N.Y.S.2d 38

(App. Div. 2005). Plaintiffs' conclusory assertions that "Defendant is aware that its

estimates of elpais.com's audience are inaccurate" and is acting "with reckless and

willful disregard regarding the accuracy of its statistics, data and ratings" are simply

insufficient to meet the pleading requirements of Fed. R. Civ. P. 8(a). *See Twombly*, 127

S. Ct. at 1965; *Amadasu* v. *Bronx Lebanon Hosp. Ctr.*, No. 03 Civ. 6450 (LAK) (AJP),

2005 WL 121746, at *13 (S.D.N.Y. Jan. 21, 2005), *report & recommendation adopted*,

No. 03 Civ. 6450 (LAK), 2005 WL 954916 (S.D.N.Y. Apr. 26, 2005), *aff'd*, 225 Fed.

Appx. 32, No. 05-3613-CV, 2007 WL 1560092 (2d Cir. May 30, 2007) ; *McNally* v.

*Yarnall*, 764 F. Supp. 838, 851 (S.D.N.Y. 1991); (Cplt. ¶¶ 81, 91, 95.)

## B.    The Trade Libel Claim Fails Because Plaintiffs Have Failed Adequately to Allege Special Damages

To state a claim for trade libel under New York law, a complaint must

allege four elements: "(1) falsity of the alleged statements; (2) publication to a third

person; (3) malice; and (4) special damages." *Computech Int'l, Inc.* v. *Compaq*

*Computer Corp.*, No. 02 Civ. 2628, 2002 WL 31398933, at *5 (S.D.N.Y. Oct. 24, 2002)

(quoting *Fashion Boutique of Short Hills, Inc.* v. *Fendi USA, Inc.*, 75 F. Supp. 2d 235,

239 (S.D.N.Y. 1999), *aff'd*, 314 F.3d 48 (2d Cir. 2002)); *accord Drug Research Corp.* v.

*Curtis Publ'g Co.*, 166 N.E.2d 319, 321-22 (N.Y. 1960); *Kasada, Inc.* v. *Access Capital,*

*Inc.*, No. 01 Civ. 8893 (GBD), 2004 WL 2903776, at *15-16 (S.D.N.Y. Dec. 14, 2004).

Here, the trade libel claim should be dismissed because Plaintiffs have

utterly failed to satisfy the strict pleading requirements for special damages. *See Kasada,*

2004 WL 2903776, at *16; *see also Gucci Am., Inc.* v. *Duty Free Apparel, Ltd.*, 277 F.
Supp. 2d 269, 277 (S.D.N.Y. 2003) ("Special damages are limited to losses having
pecuniary or economic value and must be fully and accurately stated, with sufficient
particularity to identify actual losses." (emphasis omitted)); *Berwick* v. *New World
Network Int'l*, No. 06 Civ. 2641 (JGK), 2007 WL 949767, at *14 (S.D.N.Y. Mar. 28,
2007) (noting that special damages does not mean "mere reputational harm").

        Instead, the Complaint contains conclusory, generalized allegations that
"Plaintiffs have sustained special damages in the form of lost advertising revenue, the
details of which will be given at the appropriate time in discovery." (Cplt. ¶ 84.)
Elsewhere in the Complaint, Plaintiffs allege that this lost revenue "is expected to amount
to in excess of € 1 million for this calendar year alone and is expected to increase
arithmetically, if not exponentially, over the coming months and years" and that the full
amount of damages is "to be finally determined at trial." (Cplt. ¶ 78; *id.* at 18.)  Plaintiffs
also state that they suffered "significant damage to [their] reputation" and "lost credibility
in the market by reason of Defendant's actions." (Cplt. ¶ 79.)

        But nowhere in the Complaint do Plaintiffs provide names of advertisers
they have lost.  Nor do they make any attempt to itemize the damages allegedly suffered.
And Plaintiffs' statement that they will provide the "details" of their special damages "at
the appropriate time in discovery" is insufficient under New York law.  The appropriate
time to provide these details is now.  Plaintiffs' failure to do so in the Complaint does not
meet the stringent requirements imposed for pleading special damages. *See, e.g.*, *Gucci*,
277 F. Supp. at 278 (holding that where pleading "allege[s] damages only in the form of a
general figure of 'not less than $50,000'" and "neither itemize[s] losses nor name[s]

customers . . . , the claim must be dismissed for failure to plead special damages with sufficient particularity"); *Kasada*, 2004 WL 2903776, at *16 (holding that allegation of damages "in an amount to be determined at trial but not less than $40,000,000" was "insufficient under New York law and cannot survive defendants' motion to dismiss"); *Drug Research*, 166 N.E.2d at 322 (finding that special damages were not adequately alleged where the damage claim was a round figure [$5,000,000] with no attempt at itemization).

**C.    The Complaint Fails To State a Claim for Tortious**
       **Interference with Prospective Economic Advantage**

Plaintiffs have also failed adequately to plead a claim for tortious interference with prospective economic advantage.

As courts have made clear, "[t]his cause of action has a 'limited scope,'" and is "very difficult to sustain." *Henneberry* v. *Sumitomo Corp. of Am.*, No. 04 Civ. 2128 (PKL), 2005 WL 991772, at *22 (S.D.N.Y. Apr. 27, 2005); *Kramer* v. *Pollock-Krasner Found.*, 890 F. Supp. 250, 258 (S.D.N.Y. 1995). To state such a claim, Plaintiffs must allege "(1) that they had a business relationship with a third party; (2) that [Nielsen] knew of that relationship and intentionally interfered with it; (3) that [Nielsen] acted solely out of malice or used wrongful means; and (4) that [Nielsen's] interference caused injury to the relationship with the third party." *Berwick*, 2007 WL 949767, at *14.

Plaintiffs "also must allege that [they] 'would have entered into an economic relationship but for the defendant's wrongful conduct.'" *Id.* And "[f]or purposes of the third element, wrongful means must as a general rule amount to 'a crime or an independent tort' unless the defendant has 'the sole purpose of inflicting intentional

harm on [the] plaintiffs." *Id.* (quoting *Carvel Corp.* v. *Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004)).

Plaintiffs' allegations fall well short of these rigorous pleading standards.

*First*, while the Complaint asserts that Nielsen engaged in "reckless and negligent conduct," nowhere does it allege that Nielsen "*intentionally interfered* with the business opportunities pursued by [Plaintiffs]," as is required to sustain this cause of action. *Gruntal & Co.* v. *San Diego Bancorp*, No. 94 Civ. 5366 (DC),1996 WL 343079, at *3 (S.D.N.Y. June 21, 1996).

*Second*, the Complaint is devoid of the necessary allegations that Nielsen committed acts "directed toward third parties with whom [Plaintiffs] had business relations in order to interfere with those business relations." *Id.* at *3; *see Kasada*, 2004 WL 2903776, at *20.

*Third*, by merely making generalized allegations regarding unnamed "advertisers and advertising firms with whom Plaintiffs have existing or prospective contractual relations," the Complaint fails in its obligation to "specify some particular, existing business relationship through which plaintiff would have done business but for the allegedly tortious behavior." *Henneberry* v. *Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 468 (S.D.N.Y. 2006) (quoting *Six W. Retail Acquisition, Inc.* v. *Sony Theatre Mgmt. Corp.*, No. 97 Civ. 5499 (DNE), 2000 WL 264295, at *30 (S.D.N.Y. Mar. 9, 2000)) (internal quotation marks omitted); *see Kasada*, 2004 WL 2903776, at *20.

For all these reasons, Plaintiffs fail to state a colorable claim for tortious interference with prospective economic advantage.

**D.      The Complaint Fails to State a Claim for Negligent Misrepresentation**

Finally, the Complaint fails to plead facts sufficient to state a claim for negligent misrepresentation.  As this Court has held, to properly allege such a claim, Plaintiffs "must comply with the particularity requirements of Federal Rule of Civil Procedure 9(b)."  *Phoenix Four, Inc.* v. *Strategic Res. Corp.*, No. 05 Civ. 4837 (HB), 2006 WL 399396, at *10 (S.D.N.Y. Feb. 21, 2006).  They have failed to do so.

In particular, under New York law, a claim of negligent misrepresentation requires a "special relationship of trust or confidence between the parties."  *Henneberry*, 415 F. Supp. 2d at 451 (quoting *Accusystems, Inc.* v. *Honeywell Info. Sys., Inc.*, 580 F. Supp. 474, 480 (S.D.N.Y. 1984)) (internal quotation marks omitted).  As discussed above, the relationship at issue here is instead one established by commercial contract, which is not sufficient to sustain a negligent misrepresentation claim.  *See, e.g., JP Morgan Chase Bank* v. *Winnick*, 350 F. Supp. 2d 393, 401 (S.D.N.Y. 2004); *LaSalle Bank Nat'l Ass'n* v. *Citicorp Real Estate Inc.*, No. 02 Civ. 7868 (HB), 2003 WL 1461483, at *3-6; *see also supra* pp. 3-4, 9-10.  Neither Plaintiffs' conclusory allegation that "[a] special relationship of trust existed" nor their bare assertion that they relied on Nielsen's "self-represented expertise in audience measurement" can defeat the motion to dismiss.  *See JP Morgan Chase*, 350 F. Supp. 2d at 402 (noting that where a party's expertise "amounts to nothing more than knowledge of the particulars of the company's business," that expertise "does not constitute the type of 'specialized knowledge' that is required to impose a duty of care in the commercial context"); *see also Twombly*, 127 S. Ct. at 1965.

## CONCLUSION

For the foregoing reasons, the Court should grant Nielsen's Fed. R. Civ. P.

12(b)(6) motion and dismiss all claims in Plaintiffs' complaint with prejudice.

Dated: New York, New York
February 8, 2008

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: _____
Leslie Gordon Fagen (lfagen@paulweiss.com)
Aidan Synnott (asynnott@paulweiss.com)
William J. Taylor, Jr. (wtaylor@paulweiss.com)

1285 Avenue of the Americas
New York, New York  10019-6064
(212) 373-3000

*Attorneys for Defendant The Nielsen Company (US), Inc.*