UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIARIO EL PAIS, S.L. and PRISACOM, S.A.,

Plaintiffs,

v.

THE NIELSEN COMPANY (US), INC.,

Defendant.

07-CV-11295 (HB)

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS THE AMENDED COMPLAINT
## BY DEFENDANT THE NIELSEN COMPANY (US), INC.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Defendant The Nielsen Company (US), Inc.*

Of Counsel:

Leslie Gordon Fagen
Aidan Synnott
William J. Taylor, Jr.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................1

THE ALLEGATIONS............................................................................................2
    A.    The Parties ...................................................................................2
    B.    The Prisacom/Netratings Contract................................................3
    C.    The Netratings System...................................................................4
    D.    March 2007: Netratings Updates and Improves Its Measurement
        System.........................................................................................6
    E.    Elimination of Errors in Elpais.com Audience Estimates ...............6
    F.    The Present Action ........................................................................8

ARGUMENT.........................................................................................................9

I.   THE AMENDED COMPLAINT AND THE GOVERNING CONTRACT SHOW
    THAT PLAINTIFFS CANNOT STATE A CLAIM AGAINST NIELSEN ...............9
    A.    The Contract Demonstrates that Nielsen Was Not the Relevant
        Actor Here .................................................................................10
    B.    The *Clark-Fitzpatrick* Rule Precludes Plaintiffs' Tort Claims..................12
    C.    The Contract's Limitation-of-Liability
        Clause Bars Plaintiffs' Negligence Claims...................................15

II.  PLAINTIFFS' TORT CLAIMS ALLEGING INJURY FROM DEFENDANTS'
    STATEMENTS SHOULD BE DISMISSED BECAUSE SUCH STATEMENTS
    ARE CONSTITUTIONALLY-PROTECTED OPINION .........................................16

III. PLAINTIFFS HAVE NOT PLEADED FACTS SUFFICIENT TO STATE ANY OF
    THEIR ALLEGED CLAIMS ...............................................................................18
    A.    Each of Plaintiffs' Tort Claims Fails Because Plaintiffs Have
        Failed to Plead Actual Malice.....................................................20
    B.    The Trade Libel Claim Fails Because Plaintiffs Have Failed
        Adequately to Allege Special Damages .......................................21
    C.    The Amended Complaint Fails To State a Claim for Tortious
        Interference with Prospective Economic Advantage................................22
    D.    Plaintiffs Fail to State a Claim for Negligent Misrepresentation .............24

CONCLUSION.....................................................................................................25

# TABLE OF AUTHORITIES

CASES                                                                  Page(s)

*600 W. 115th St. Corp.* v. *Von Gutfeld*,
   603 N.E.2d 930 (N.Y. 1992) .................................................................17

*Abbott* v. *Harris Publ'ns, Inc.*,
   No. 97 Civ. 7648 (JSM), 1998 WL 849412 (S.D.N.Y. Dec. 4, 1998) ...................16

*Amadasu* v. *Bronx Lebanon Hosp. Ctr.*,
   No. 03 Civ. 6450 (LAK) (AJP), 2005 WL 121746 (S.D.N.Y. Jan. 21, 2005),
   *adopted*, No. 03 Civ. 6450 (LAK), 2005 WL 954916 (S.D.N.Y. Apr. 26,
   2005), *aff'd*, 225 Fed. Appx. 32 (2d Cir. May 30, 2007) ........................21

*Astor Holdings, Inc.* v. *Roski*,
   No. 01 Civ. 1905 (GEL), 2002 WL 72936 (S.D.N.Y. Jan. 17, 2002) ................23

*Bell Atl. Corp.* v. *Twombly*,
   127 S. Ct. 1955 (2007) .......................................................... 11, 18-20, 25

*Berwick* v. *New World Network Int'l*,
   No. 06 Civ. 2641 (JGK), 2007 WL 949767 (S.D.N.Y. Mar. 28, 2007) ...........22-23

*Bishop* v. *Porter*,
   No. 02 Civ. 9542(JSR)(GWG), 2003 WL 21032011 (S.D.N.Y. May 8, 2003) .........19

*Clark-Fitzpatrick, Inc.* v. *Long Island R.R. Co.*,
   516 N.E.2d 190 (N.Y. 1987) ......................................................... 9, 12-14

*Computech Int'l, Inc.* v. *Compaq Computer Corp.*,
   No. 02 Civ. 2628, 2002 WL 31398933 (S.D.N.Y. Oct. 24, 2002) ...................21

*Compuware Corp.* v. *Moody's Investors Servs., Inc.*,
   499 F.3d 520 (6th Cir. 2007) ..........................................................18

*Duane Reade, Inc.* v. *Clark*,
   No. 107438/03, 2004 WL 690191 (N.Y. Sup. Ct. Mar. 31, 2004) ..................17

*Feick* v. *Fleener*,
   653 F.2d 69 (2d Cir. 1981) ...........................................................11-12

*Genal Strap, Inc.* v. *Dar*,
   No. 04 CV 1691 (SJ), 2005 WL 525547 (E.D.N.Y. Feb. 28, 2005) .................23

*Gucci Am., Inc.* v. *Duty Free Apparel, Ltd.*,
   277 F. Supp. 2d 269 (S.D.N.Y. 2003) .................................................22

**Page(s)**

*Henneberry* v. *Sumitomo Corp. of Am.*,
    532 F. Supp. 2d 523 (S.D.N.Y. 2007) ............................................................24

*Henneberry* v. *Sumitomo Corp. of Am.*,
    No. 04 Civ. 2128 (PKL), 2005 WL 991772 (S.D.N.Y. Apr. 27, 2005) ............16, 22

*Hustler Magazine* v. *Falwell*,
    485 U.S. 46 (1988)............................................................................................16

*Immuno AG* v. *Moor-Jankowski*,
    567 N.E.2d 1270 (N.Y. 1991)............................................................................16

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007) .........................................................................19-20

*In re Xethanol Corp. Sec. Litig.*,
    No. 06 Civ. 10234 (HB), 2007 WL 2572088 (S.D.N.Y. Sept. 7, 2007)................19

*Iqbal* v. *Hasty*,
    490 F.3d 143 (2d Cir. 2007) .............................................................................19

*John & Vincent Arduini Inc.* v. *NYNEX*,
    129 F. Supp. 2d 162, 174 (N.D.N.Y. 2001)........................................................22

*JP Morgan Chase Bank* v. *Winnick*,
    350 F. Supp. 2d 393 (S.D.N.Y. 2004) ...........................................................24-25

*Kasada, Inc.* v. *Access Capital, Inc.*,
    No. 01 Civ. 8893 (GBD), 2004 WL 2903776 (S.D.N.Y. Dec. 14, 2004) .............21

*Kim* v. *Dvorak*,
    658 N.Y.S.2d 502 (App. Div. 1997)...................................................................16

*LaSalle Bank Nat'l Ass'n* v. *Citicorp Real Estate Inc.*,
    No. 02 Civ. 7868 (HB), 2003 WL 1461483 (S.D.N.Y. Mar. 31, 2003) ......13, 24-25

*Levin* v. *McPhee*,
    917 F. Supp. 230 (S.D.N.Y. 1996), *aff'd*, 119 F.3d 189 (2d Cir. 1997)................17

*Matusovsky* v. *Merrill Lynch*,
    186 F. Supp. 2d 397 (S.D.N.Y. 2002) ...........................................................11-12

*McNally* v. *Yarnall*,
    764 F. Supp. 838 (S.D.N.Y. 1991) ....................................................................21

*Menaldi* v. *Pay-Per-View Network, Inc.*,
    No. 97 Civ. 6451 (HB), 1998 WL 230994 (S.D.N.Y. May 5, 1998), *aff'd sub*
    *nom. Menaldi* v. *Group W Broad., Inc.*, 182 F.3d 900 (2d Cir. 1999) ................14

**Page(s)**

*Milkovich* v. *Lorain Journal Co.*,
    497 U.S. 1 (1990)................................................................................................16

*Minn. Mining & Mfg. Co.* v. *Graham-Field, Inc.*,
    No. 96 Civ. 3839 (MBM), 1997 WL 166497 (S.D.N.Y. Apr. 9, 1997) ............................23-24

*Mr. Chow of N.Y.* v. *Ste. Jour Azur S.A.*,
    759 F.2d 219 (2d Cir. 1985) ................................................................................17

*N.Y. Times Co.* v. *Sullivan*,
    376 U.S. 254 (1964)............................................................................................20

*Official Comm. of Unsecured Creditors* v. *Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688 (WHP), 2002 WL 362794 (S.D.N.Y. Mar. 6, 2002) ......................15

*Phoenix Four, Inc.* v. *Strategic Res. Corp.*,
    No. 05 Civ. 4837 (HB), 2006 WL 399396 (S.D.N.Y. Feb. 21, 2006)................................24

*Porter* v. *Property Damage Control Group, Inc.*,
    No. 03 CV 5972, 2007 WL 2907403 (E.D.N.Y. Sept. 28, 2007)............................................14

*Rapoport* v. *Asia Elecs. Holding Co.*,
    88 F. Supp. 2d 179 (S.D.N.Y. 2000) ..........................................................................11-12

*RBS Holdings, Inc.* v. *Wells Fargo Century, Inc.*,
    485 F. Supp. 2d 472 (S.D.N.Y. 2007) ..........................................................................3

*Roth* v. *Jennings*,
    489 F.3d 499 (2d Cir. 2007) ................................................................................12

*Sassower* v. *N.Y. Times Co.*,
    852 N.Y.S.2d 180, 182 (App. Div. 2008).....................................................................16

*Sazerac Co.* v. *Falk*,
    861 F. Supp. 253 (S.D.N.Y. 1994) ..........................................................................11

*Search King, Inc.* v. *Google Tech., Inc.*,
    No. CIV-02-1457-M, 2003 WL 21464568 (W.D. Okla. May 27, 2003) ........................17-18

*Sel-Leb Mktg., Inc.* v. *Dial Corp.*,
    No. 01 Civ. 9250 (SHS), 2002 WL 1974056 (S.D.N.Y. Aug. 27, 2002)................................3

*Smith* v. *Local 819 I.B.T. Pension Plan*,
    291 F.3d 236 (2d Cir. 2002) ................................................................................20

*Sommer* v. *Fed. Signal Corp.*,
    593 N.E.2d 1365 (N.Y. 1992).........................................................................13, 15

**Page(s)**

*TD Waterhouse Investor Servs., Inc.* v. *Integrated Fund Servs., Inc.*,
    No. 01 Civ. 8986 (HB), 2003 WL 42013 (S.D.N.Y. Jan. 6, 2003) .........................14

*Themed Rests., Inc.* v. *Zagat Survey, LLC*,
    801 N.Y.S.2d 38 (App. Div. 2005)................................................................. 17-18

*Themed Rests., Inc.* v. *Zagat Survey, LLC*,
    781 N.Y.S.2d 441, 448-50 (Sup. Ct. 2004), *aff'd*, 801 N.Y.S.2d 38 (App. Div.
    2005) ..............................................................................................................20

*United States ex rel. Evergreen Pipeline Constr. Co.* v. *Merritt Meridian Constr.
    Corp.*,
    95 F.3d 153 (2d Cir. 1996) ...........................................................................14

*Universal Licensing Corp.* v. *Paolo del Lungo S.p.A.*,
    293 F.3d 579 (2d Cir. 2002) .........................................................................12

*Williams* v. *N.Y. City Hous. Auth.*,
    No. 05 Civ. 2750 (DC), 2007 WL 4215876 (S.D.N.Y. Nov. 30, 2007)........... 19-20

*Yak* v. *Bank Brussels Lambert, BBL*,
    252 F.3d 127 (2d Cir. 2001) ...........................................................................3

**STATUTES AND RULES**

28 U.S.C. § 1332...............................................................................................11

Fed. R. Civ. P. 9(g)...........................................................................................21

Defendant The Nielsen Company (US), Inc. ("Nielsen") respectfully submits this memorandum of law in support of its motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Amended Complaint filed by plaintiffs Diario El Pais, S.L. ("El Pais") and Prisacom, S.A. ("Prisacom") (together, "Plaintiffs") for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

The pleading in this case is an exercise in evasion. A written contract governs here, but Plaintiffs pretend it does not exist and bring this action in tort. Netratings Spain, S.L. Unipersonal ("Netratings"), a Spanish company, has provided Plaintiffs with all the services at issue in this litigation, but El Pais and Prisacom have chosen to sue only Nielsen, a New York corporation with which they have no relevant contractual or other relationship.

Plaintiffs have done all this in a rather blatant attempt to avoid both the settled legal principles restricting tort claims in the presence of a contract and the clear limitations on liability contained in the governing contract here. These evasionary tactics are not permissible, however, and cannot withstand Nielsen's motion to dismiss.

Instead, under the law, the Court should consider not only the allegations in the Amended Complaint, but also the terms and provisions of the governing contract. Together, these two documents demonstrate Plaintiffs' utter failure to state a claim. The attempt here to transform a potential contract claim against Netratings into a tort claim against Nielsen simply cannot survive the most basic scrutiny on this motion to dismiss.

Moreover, Plaintiffs' claims also run afoul of the free-speech protections of the U.S. and New York Constitutions. And Plaintiffs fail to plead sufficient facts adequately to allege any of their claims.

For these reasons, discussed in detail below, the Amended Complaint should be dismissed in its entirety.

## THE ALLEGATIONS

This statement is based on the allegations in the Amended Complaint ("Am. Cplt.," a copy of which is attached as Exhibit B to the accompanying Declaration of William J. Taylor, Jr. ("Taylor Decl.")), as well as other documents that the Court may properly consider on this motion to dismiss.

### A.    The Parties

El Pais and Prisacom are Spanish corporations with their principal places of business in Madrid, Spain. (Am. Cplt. ¶ 19.) El Pais is the owner and publisher of *El Pais*, Spain's most widely read daily newspaper with a circulation of approximately 430,000 copies per day. (*Id.* ¶¶ 1, 22.) Prisacom, through an agreement with El Pais, owns and operates elpais.com, the online version of *El Pais*. (*Id.* ¶¶ 1, 23.) Both El Pais and Prisacom are part of Promotora de Informaciones, S.A. ("Grupo Prisa"), a Spanish media conglomerate. (*Id.* ¶ 1.)

Nielsen is a New York corporation with its principal place of business in New York, New York. (*Id.* ¶ 19.) Nielsen is a subsidiary of the Nielsen Company B.V., a Netherlands corporation and the world's leading provider of marketing information, audience measurement, and business media products and services. (*Id.* ¶¶ 19, 24.)

2

Netratings—neither named as a defendant nor even mentioned in the complaint—is a Spanish company with its principal place of business in Madrid. (Taylor Decl. Ex. D at 1.) Netratings is a wholly-owned subsidiary of Netratings Australia Pty Limited; through multiple levels of corporate organization, Nielsen is ultimately a parent company of Netratings. Thus, while Netratings is a part of Nielsen group of companies, it is a wholly separate entity from the defendant in this litigation.

Netratings is the leading provider of internet audience estimates in Spain. (Am. Cplt. ¶ 2; Taylor Decl. Ex. D.)

**B.    The Prisacom/Netratings Contract**

Although Plaintiffs fail to allege it in their Complaint or their Amended Complaint, a key document in this case is a service contract between Prisacom and Netratings dated July 26, 2005, entered into in Madrid (the "Prisacom/Netratings Contract" or the "Contract," attached at Taylor Decl. Ex. D).[1] The relationship at issue in this case—the provision of "Internet measurement services" to Plaintiffs—is governed by this Contract.

Under the Prisacom/Netratings Contract, Netratings agrees to "provide Internet measurement services" for Spain to Prisacom, and Prisacom agrees to pay an

---

[1] Because the Prisacom/Netratings Contract, which established and governs the relationship at issue in this dispute, is "integral to the complaint," the Court may properly consider it on this motion. *Yak* v. *Bank Brussels Lambert*, 252 F.3d 127, 130-31 (2d Cir. 2001); *see RBS Holdings, Inc.* v. *Wells Fargo Century, Inc.*, 485 F. Supp. 2d 472, 476-77 (S.D.N.Y. 2007); *Sel-Leb Mktg., Inc.* v. *Dial Corp.*, No. 01 Civ. 9250 (SHS), 2002 WL 1974056, at *2-3 (S.D.N.Y. Aug. 27, 2002). That Plaintiffs have not attached, incorporated, or specifically referenced the Contract in the Complaint changes nothing. *See Yak*, 252 F.3d at 131 ("Carefully avoiding all mention of the Consulting Agreements does not make them any less integral to [plaintiff's] complaint.").

annual fee of € 31,518.75 to Netratings.  (Taylor Decl. Ex. D at 1; *id.* ¶ 15.1.)  The

Contract also expressly limits any potential liabilities for Netratings:

> NETRATINGS shall not be liable in any event for indirect,
> special, incidental, consequential, punitive or confidence
> damages, including, *inter alia*, loss of profits, savings or
> income, be they of a contractual, extracontractual or other
> nature (including negligence, product liability and objective
> liability) . . . .

(*Id.* ¶ 9.3.)  "[T]he total maximum liability of NETRATINGS, under any circumstance,

shall not exceed the amount actually paid by [Prisacom] to NETRATINGS under the

contract for twelve months prior to the date on which the case arises."  (*Id.* ¶ 9.4.)  And

the Contract also makes clear that there are some inherent limitations to the Netratings

system, and that the reliability of all information provided through the Netratings system

necessarily "corresponds to the[se] limitations."  (*Id.* ¶ 9.1.)

   Finally, the Prisacom/Netratings Contract contains a merger clause and a

no-oral-modification clause and so "the Contract constitutes the full agreement between

the parties" and "may not be amended except by written instrument."  (*Id.* ¶¶ 13.6, 13.7.)

## C. **The Netratings System**

   Netratings calculates internet ratings based on a statistical analysis of data

collected from a panel of internet users.  (Am. Cplt. ¶ 25; Taylor Decl. Ex. D.)

Netratings, through proprietary software, tracks the member's internet activity.  (Am.

Cplt. ¶ 26; Taylor Decl. Ex. D.)  Netratings takes the data collected from the panel and

uses a proprietary methodology to produce a report ranking the websites by audience size

in each geographic location.  (Am. Cplt. ¶ 27; Taylor Decl. Ex. D.)  Netratings publishes

its audience estimates to its clients—including Prisacom—monthly. (Am. Cplt. ¶¶ 27-28; Taylor Decl. Ex. D.)

In measuring audience size, Netratings seeks to provide the most accurate estimate possible of the number of "unique users" who purposely view each website page during any given month. (Am. Cplt. ¶ 27; Taylor Decl. Ex. D.) Thus, to the extent they can be identified as such, Netratings does not credit automated calls to the unique user count that forms the basis of its audience estimates and website rankings. (Am. Cplt. ¶ 52; Taylor Decl. Ex. D.)

RSS, or "really simple syndication," is a format commonly used by online media to syndicate news headlines to other websites. For example, other websites can subscribe to elpais.com's RSS feed and thus publish automatically updating headlines from elpais.com. To receive these updated headlines, the receiving website will generally place automated calls to the elpais.com RSS page. To the extent possible, Netratings attempts to exclude such automated calls from its audience estimates. (Am. Cplt. ¶ 52; Taylor Decl. Ex. D.)

Prior to March 2007, the panel from which Netratings collected unique user data in Spain consisted of 4,000 users using the internet from their homes. (Am. Cplt. ¶ 4; Taylor Decl. Ex. D.) Those who connected to the internet from work were not measured and thus were not included in any audience measurements. (Am. Cplt. ¶ 38.) Under this pre-March 2007 system, Netratings estimated that elpais.com grew its audience from 1.76 million unique users in August 2007 to 2.37 million unique users in February 2007. (*Id.* ¶ 4; Taylor Decl. Ex. D.) And, based on these estimates, Netratings

ranked elpais.com as the Number 2 media website in Spain over this time period (except for December 2006, when it ranked Number 3). (Am. Cplt. ¶ 4; Taylor Decl. Ex. D.)

**D.      March 2007: Netratings Updates and Improves Its Measurement System**

In March 2007, as part of its continued effort to improve its services to its clients, Netratings made two significant upgrades to its internet measurement system in Spain. *First*, it increased the size of its panel of home users from 4,000 to 16,000; and added 1,000 work users to the panel. (Am. Cplt. ¶ 41; Taylor Decl. Ex. D.) *Second*, in order to further increase the accuracy and reliability of its ratings, Netratings also updated the methodology used to convert the data collected from users into audience estimates. (Am. Cplt. ¶ 41; Taylor Decl. Ex. D.)

After these March 2007 upgrades took effect, both elpais.com, as well as its competitors, experienced growth in their estimated audience sizes. (Am. Cplt. ¶ 46.) Elpais.com, however, experienced larger growth, and from March 2007 through May 2007, it narrowed the gap between itself and the market leader among Spanish media websites, el mundo.es. (*Id.* ¶ 48.) Then, in July 2007, Netratings reported that, based on its measurement of audience estimates, elpais.com had become the Number 1 media website in Spain as of June 2007. (Am. Cplt. ¶ 48; Taylor Decl. Ex. D.)

**E.      Elimination of Errors in Elpais.com Audience Estimates**

On September 21, 2007, reports surfaced in the Spanish media that certain automated calls had been included in the audience estimates for elpais.com, unintentionally inflating those estimates by as much as 20%. (Am. Cplt. ¶ 51.) In particular, it was reported that automated calls to elpais.com's so-called RSS page were included in the audience estimates for elpais.com. (*Id.* ¶¶ 51-52.)

In its continuing effort to publish the most accurate and reliable data possible, Netratings quickly reacted to these reports of automated calls in the elpais.com audience estimates. Starting on September 21 and continuing over the next several days, representatives of Netratings met with representatives of Prisacom in-person and over the phone to discuss the situation. (*Id.* ¶¶ 54-69; Taylor Decl. Ex. D.) Over the course of these meetings, Netratings informed Prisacom that its internal review confirmed what had been reported in the media—that, due to the unintended inclusion of automated calls to elpais.com's RSS page, upwards of one million users had been improperly added to the audience estimate for elpais.com. (Am. Cplt. ¶¶ 54-69; Taylor Decl. Ex. D.) Netratings also made clear to Prisacom that when it published its audience estimates and rankings for August 2007, it intended to correct the estimates for elpais.com to exclude the automated calls. (Am. Cplt. ¶¶ 54-69; Taylor Decl. Ex. D.)

On September 26, 2007, Netratings published those internet audience estimates for August 2007. (Am. Cplt. ¶¶ 69-70; Taylor Decl. Ex. D.)[2] They showed a reduction of 1.8 million unique users to elpais.com. (Am. Cplt. ¶ 62.) And in the August 2007 ranking of Spanish media websites, elpais.com fell from Number 1 to Number 3. (*Id.*)

Since September, Netratings has continued to publish internet audience estimates excluding the automated calls to elpais.com's RSS page. It has also revised all

---

[2]    Due to an administrative oversight, Netratings temporarily released this information the day before, on September 25, before Prisacom had a final opportunity to review the data before publication. (Am. Cplt. ¶ 67; Taylor Decl. Ex. D.) After recalling the data, however, Netratings met once again with Prisacom, apologized for the administrative oversight, and notified Prisacom that it next would officially publish this same data. (Am. Cplt. ¶ 69; Taylor Decl. Ex. D.)

past data impacted by the inclusion of these automated calls. (*Id.* ¶¶ 12-13; Taylor Decl. Ex. D.)

**F.**    **The Present Action**

Despite the clear contractual provisions governing the publication of Netratings audience estimates and rankings, Plaintiffs have not sued Netratings or sought relief under the Prisacom/Netratings Contract.

Instead, ignoring the requirements and limitations of the Contract, on December 17, 2007, Plaintiffs sued Nielsen, a separate company several levels removed from Netratings in the corporate organization. Contending that "Nielsen has violated New York law in connection with its publication of false and misleading estimations of the audience of elpais.com," the original Complaint asserted claims for trade libel, tortious and negligent interference with prospective interference with prospective economic advantage, and negligent misrepresentation. On February 8, 2008, Nielsen moved to dismiss, arguing that Plaintiffs' claims were barred by the Prisacom/Netratings Contract and the free-speech protections of the U.S. and New York Constitutions, and that Plaintiffs had failed to plead sufficient facts to allege any of their claims.

In response to Nielsen's motion, on April 3, 2008, Plaintiffs filed their Amended Complaint. The Amended Complaint is nearly an exact duplicate of the original. Plaintiffs bring the same three claims against Nielsen, and almost every allegation in the Amended Complaint is a word-for-word copy of the original. Plaintiffs

have merely appended a confidential Annex 1 regarding special damages and reworded some of the allegations contained in their tortious interference claim.[3]

This feeble attempt to amend is of no moment. As the original motion to dismiss made clear, the problem here was not one of draftstmanship; the facts simply cannot support Plaintiffs' claims. As alleged in the Amended Complaint, they are still barred by the Prisacom/Netratings Contract. They are still barred by the U.S. and New York Constitutions. And Plaintiffs have still failed to plead sufficient facts to allege any of their claims.

Accordingly, Nielsen now moves to dismiss the Amended Complaint for the reasons discussed below.

## ARGUMENT

### I.

### THE AMENDED COMPLAINT AND THE GOVERNING CONTRACT SHOW THAT PLAINTIFFS CANNOT STATE A CLAIM AGAINST NIELSEN

The Prisacom/Netratings Contract contains two independent bars to the sort of tort claims El Pais and Prisacom allege here. *First*, the rule laid down in *Clark-Fitzpatrick, Inc.* v. *Long Island Rail Road Co.* and its progeny makes clear that no tort liability can be had "unless a legal duty independent of the contract itself has been violated." 516 N.E.2d 190, 193 (N.Y. 1987). *Second*, as discussed above, the Contract contains a limitation-of-liability clause that expressly bars claims sounding in negligence

---

[3]    As in the original Complaint, Plaintiffs allege in the Amended Complaint that New York law governs their tort claims. For purposes of this motion to dismiss alone, we accept the allegations as true.

Plaintiffs have attempted to evade these restrictions by pretending the Contract does not exist, ignoring their relationship with Netratings, and suing Nielsen in tort for the precise activities that Netratings was contractually obligated to perform. The law is clear, however, that these kinds of tactics cannot prevent a motion to dismiss. Properly considering both the allegations in the Amended Complaint and the terms of Prisacom/Netratings Contract, the Court should reject this improper attempt to evade contractual restrictions and should dismiss El Pais and Prisacom's claims in their entirety.

A.    **The Contract Demonstrates that Nielsen Was Not the Relevant Actor Here**

The Prisacom/Netratings Contract shows that—despite the efforts made in the Amended Complaint to simply imagine away the Contract and, indeed, the entire corporate structure of a multinational conglomerate—Plaintiffs have no claim against Nielsen. The Contract makes plain that the relationship at issue in this dispute is instead between Prisacom and Netratings, two Spanish companies headquartered in Madrid. *See supra* pp. 3-4. Nielsen, the named defendant in this action, is a wholly separate corporation from Netratings. And Nielsen has no contractual or other relationship with Plaintiffs concerning the services that are at issue here. For this reason alone, the motion to dismiss should be granted.

Plaintiffs allege in the Amended Complaint that Prisacom is a client of Nielsen and that it is through this client relationship that Plaintiffs received the Netratings audience estimates that are the subject of this dispute. (Am. Cplt. ¶ 28.) But these allegations are contradicted by the plain terms of the Prisacom/Netratings Contract. And nowhere in the Amended Complaint do El Pais and Prisacom plead, as they must, any facts explaining away this Contract or alleging that, despite the Contract, Nielsen was the

10

true actor here. *See, e.g., Bell Atl. Corp.* v. *Twombly*, 127 S. Ct. 1955, 1964-65, 1968-69 (2007); *see also infra* pp. 18-20.

As discussed above, the Prisacom/Netratings Contract makes clear that Prisacom and Netratings are the parties to the Contract and that Prisacom is the "CLIENT" of Netratings. *See supra* pp. 3-4; (Taylor Decl. Ex. D at 1). It states that Netratings "shall provide Internet measurement services to [Prisacom], by granting a usage license," that "both Parties agree that the relationship shall be governed by" the Contract, and that the Contract "constitutes the full agreement between the parties." (Taylor Decl. Ex. D at 1; *id.* ¶ 13.7.) And it is signed by a representative of Prisacom, a representative of Netratings, and no one else. (*Id.* at 10.) Simply put, it is the Prisacom/Netratings Contract by which Plaintiffs receive the Netratings "Internet measurement services" at issue in this case; Nielsen is not a party to this Contract.

The law is clear that under these circumstances—*i.e.*, where the allegations in a Plaintiff's complaint are contradicted by another document or documents that the Court may properly consider on a motion to dismiss—"the documents control and this Court need not accept as true the allegations in the . . . complaint." *Rapoport* v. *Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000); *see, e.g., Feick* v. *Fleener*, 653 F.2d 69, 75 (2d Cir. 1981); *Matusovsky* v. *Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002); *Sazerac Co.* v. *Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994).

In *Matusovsky* v. *Merrill Lynch*, for example, Judge Marrero granted Merrill Lynch's Rule 12(b)(6) motion to dismiss based on its review of the terms of a written release between the parties and submitted with Merrill's motion, which, the court found, contradicted plaintiff's allegations in the complaint that this release was invalid.

11

186 F. Supp. 2d at 400-01. Similarly, in *Rapoport* v. *Asia Electronics Holding Co.*, Judge Edelstein "closely examined the substance" of two documents upon which plaintiffs' claims relied but which were not attached to the complaint, found that "the documents contradict[ed] Plaintiffs' allegations," and, for this reason, granted defendants' motion to dismiss. 88 F. Supp. 2d at 184.[4]

Thus, because the Prisacom/Netratings Contract "show[s] on [its] face absence of any grounds for relief," the Amended Complaint should be dismissed. *Feick*, 653 F.2d at 75.[5]

**B.**    **The *Clark-Fitzpatrick* Rule Precludes Plaintiffs' Tort Claims**

There is, of course, good reason why Plaintiffs have attempted the charade of ignoring the Prisacom/Netratings Contract and suing Nielsen instead of Netratings. Under the New York Court of Appeals's seminal decision in *Clark-Fitzpatrick, Inc.* v. *Long Island Rail Road Co.*, the Contract plainly precludes Plaintiffs' tort claims.

---

[4]    The Second Circuit's decision in *Roth* v. *Jennings*, 489 F.3d 499 (2d Cir. 2007), is not to the contrary. Unlike in *Roth*, the Court here need only consider "what" the Contract states—*i.e.*, that Netratings, not Nielsen, is the entity contractually obligated to provide the "Internet measurement services" at issue in this litigation. The "truth" of the Contract is, of course, not in question. *See id.* at 510-11 (reaffirming the *Matusosky* and *Rapoport* decisions).

[5]    A federal court has no subject-matter jurisdiction over this Spanish law dispute between Spanish corporations covering services to be delivered in Spain. Diversity jurisdiction does not extend that far. *See* 28 U.S.C. § 1332  Thus, even if Plaintiffs were to attempt to amend their pleading and name Netratings as a defendant, the Complaint would still be subject to dismissal under Rule 12(b). *See Universal Licensing Corp.* v. *Paolo del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002) ("[D]iversity is lacking . . . where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens.")

Under New York law, "[i]t is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick*, 516 N.E.2d at 193; *see, e.g., LaSalle Bank Nat'l Ass'n* v. *Citicorp Real Estate Inc.*, No. 02 Civ. 7868 (HB), 2003 WL 1461483, at *3 (S.D.N.Y. Mar. 31, 2003); *Sommer* v. *Fed. Signal Corp.*, 593 N.E.2d 1365, 1368-69 (N.Y. 1992). "The legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Clark-Fitzpatrick*, 516 N.E.2d at 194; *see LaSalle*, 2003 WL 1461483, at *3.

Here, Plaintiffs have not properly alleged the violation of any legal duty independent of the obligations created by the Prisacom/Netratings Contract.

In their Amended Complaint, Plaintiffs bring three tort claims against Nielsen: for trade libel, tortious and negligent interference with prospective economic advantage, and negligent misrepresentation. (Am. Cplt. ¶¶ 80-99.) Each seeks monetary damages from Nielsen for the same alleged behavior—the "publication of false and misleading estimations of the audience of elpais.com." (*Id.* at 1.) The trade libel claim alleges "publication of . . . inaccurate and unreliable estimates of elpais.com's audience." (*Id.* ¶ 81.) The tortious and negligent interference with economic advantage claim charges Nielsen with "the dissemination of inaccurate estimates of elpais.com's online audience." (*Id.* ¶ 89.) And the negligent misrepresentation claim accuses Nielsen of "false representations" of "its estimates of elpais.com's audience and its resultant ranking." (*Id.* ¶¶ 96, 98.)

"Each of these allegations, however, is merely a restatement, albeit in slightly different language," of Netratings's obligations under the Prisacom/Netratings Contract to provide Prisacom with "information about the entire Internet market" for Spain, and an attempt to accuse Nielsen of violating these obligations. *Clark-Fitzpatrick*, 516 N.E.2d at 194; *see supra* pp. 3-4, 11. Simply adding the words "negligent," "intentional," and "libel" cannot transform the contractual obligations into a tort claim. *See Clark-Fitzpatrick*, 516 N.E.2d at 194; *TD Waterhouse Investor Servs., Inc.* v. *Integrated Fund Servs., Inc.*, No. 01 Civ. 8986 (HB), 2003 WL 42013, at *12-13 (S.D.N.Y. Jan. 6, 2003); *Menaldi* v. *Pay-Per-View Network, Inc.*, No. 97 Civ. 6451 (HB), 1998 WL 230994, at *3 (S.D.N.Y. May 5, 1998), *aff'd sub nom. Menaldi* v. *Group W Broad., Inc.*, 182 F.3d 900 (2d Cir. 1999); *see also Porter* v. *Property Damage Control Group, Inc.*, No. 03 CV 5972, 2007 WL 2907403, at *10 (E.D.N.Y. Sept. 28, 2007).

Moreover, the damages that Plaintiffs seek under their tort claims against Nielsen— REDACTED for "lost advertising revenue"—"were clearly within the contemplation of the written agreement," which expressly bars such "consequential" damages for "loss of profits . . . or income." *Clark-Fitzpatrick*, 516 N.E.2d at 194; (Taylor Decl. Ex. D ¶ 9.3). Such "restrictions upon damages for breach of contract claims" cannot be avoided "merely by recasting the breach as a tort." *United States ex rel. Evergreen Pipeline Constr. Co.* v. *Merritt Meridian Constr. Corp.*, 95 F.3d 153, 162 (2d Cir. 1996).

Finally, Plaintiffs' allegations of damage to its "business reputation" cannot support its tort causes of action here. *See Menaldi*, 1998 WL 230994, at *3.

Thus, even if Plaintiffs had (and could) sue the proper party here, the

Amended Complaint should be dismissed in its entirety under the *Clark-Fitzpatrick* rule.

**C.    The Contract's Limitation-of-Liability
        Clause Bars Plaintiffs' Negligence Claims**

In addition, as the New York Court of Appeals has held, "a contractual

provision absolving a party from its own negligence will be enforced." *Sommer*, 593

N.E.2d at 1370. Section 9.3 of the Prisacom/Netratings Contract contains just such a

limitation-of-liability clause. (Taylor Decl. Ex. D ¶ 9.3); *see supra* p. 4. Plaintiffs' claim

for negligent misrepresentation would plainly be precluded by this clause. *See, e.g.*,

*Official Comm. of Unsecured Creditors* v. *Donaldson, Lufkin & Jenrette Sec. Corp.*, No.

00 Civ. 8688 (WHP), 2002 WL 362794, at *16 (S.D.N.Y. Mar. 6, 2002) (holding that a

similar contractual provision barred negligent misrepresentation claim).[6] And, as

discussed above, Plaintiffs cannot avoid that preclusion by pretending the

Prisacom/Netratings Contract does not exist. This Contract simply belies Plaintiffs' bare

allegations that Nielsen acted here.

*            *            *            *

For all the above reasons, the Court need examine nothing more on this

motion than the Prisacom/Netratings Contract. By itself, that contract makes clear that

Plaintiffs' claims should be dismissed under Fed. R. Civ. P. 12(b)(6).

---

[6]    If it actually existed under New York law, Plaintiffs' claim for negligent interference
with prospective economic advantage would similarly be barred by the Contract's
limitation-of-liability clause. But, as we note below, such a claim is not recognized in
New York. *See infra* note 7.

## II.

## PLAINTIFFS' TORT CLAIMS ALLEGING INJURY FROM DEFENDANTS' STATEMENTS SHOULD BE DISMISSED BECAUSE SUCH STATEMENTS ARE CONSTITUTIONALLY-PROTECTED OPINION

Plaintiffs' claims should also be dismissed because the allegedly false statements on which they are based constitute opinions and thus enjoy full and absolute constitutional protection.

It is well-settled that "[s]tatements of opinion which do not 'contain a provably false factual connotation' are protected by the U.S. and New York constitutions." *Abbott* v. *Harris Publ'ns, Inc.*, No. 97 Civ. 7648 (JSM), 1998 WL 849412, at *5 (S.D.N.Y. Dec. 4, 1998); *see Milkovich* v. *Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990); *Immuno AG* v. *Moor-Jankowski*, 567 N.E.2d 1270, 1275 (N.Y. 1991). Indeed, the free speech guarantee of the New York Constitution provides even greater protection to expressions of opinion than does the First Amendment. *Immuno AG*, 567 N.E.2d at 1277-78; *see Henneberry* v. *Sumitomo Corp. of Am.*, No. 04 Civ. 2128 (PKL), 2005 WL 991772, at *16 (S.D.N.Y. Apr. 27, 2005).

Thus, New York courts have held time and again that "expressions of opinion, false or not, libelous or not, are constitutionally protected and may not be the subject of private damages actions." *Kim* v. *Dvorak*, 658 N.Y.S.2d 502, 505 (App. Div. 1997) (quoting *Steinhilber* v. *Alphonse*, 501 N.E.2d 550, 550 (N.Y. 1986), and *Rinaldi* v. *Holt, Rinehart & Winston, Inc.*, 366 N.E.2d 1299, 1306 (N.Y. 1977)) (internal quotation marks omitted); *accord Sassower* v. *N.Y. Times Co.*, 852 N.Y.S.2d 180, 182 (App. Div. 2008). Instead, "this constitutional shield requires that assertions of fact, not opinion, form the basis of a claim." *Henneberry*, 2005 WL 991772, at *16.

This analysis, which was developed in the defamation context, applies equally to the claims of trade libel, tortious interference with prospective economic advantage, and negligent representation that Plaintiffs have alleged in this case. *See, e.g., Themed Rests., Inc. v. Zagat Survey, LLC*, 801 N.Y.S.2d 38, 39-40 (App. Div. 2005) (trade libel and negligence); *Duane Reade, Inc.* v. *Clark*, No. 107438/03, 2004 WL 690191, at *10 (N.Y. Sup. Ct. Mar. 31, 2004) (tortious interference); *see also Hustler Magazine* v. *Falwell*, 485 U.S. 46, 56 (1988); *Levin* v. *McPhee*, 917 F. Supp. 230, 242 & n.15 (S.D.N.Y. 1996), *aff'd*, 119 F.3d 189 (2d Cir. 1997). And the determination of whether a statement constitutes protected expression of opinion or actionable factual representation is a question of law for the Court. *Mr. Chow of N.Y.* v. *Ste. Jour Azur S.A.*, 759 F.2d 219, 224 (2d Cir. 1985); *600 W. 115th St. Corp.* v. *Von Gutfeld*, 603 N.E.2d 930, 934 (N.Y. 1992).

One court has already considered the question at issue here, and held that internet website rankings "constitute opinions protected by the First Amendment" and are protected from tort liability. *Search King, Inc.* v. *Google Tech., Inc.*, No. CIV-02-1457-M, 2003 WL 21464568, at *2-4 (W.D. Okla. May 27, 2003). Much like this case, the plaintiff in *Search King*, a website operator, alleged that Google had "purposefully and maliciously decreased" the ranking of plaintiff's websites and this reduction thereby reduced plaintiff's advertising revenue, which was based on the website rankings. *Id.* at *1-2. Plaintiff brought a claim for tortious interference with contractual relations to attempt to recover this lost revenue, and Google moved to dismiss under Fed. R. Civ. P. 12(b)(6), asserting that it was "immune from tort liability arising out of the devaluation because [its website ranking system] constitute[s] protected speech." *Id.* at *2.

The district court agreed with Google. It found that although Google's process and methodology for ranking websites was "objective" and "capable of replication," the results of that process—*i.e.*, "the numerical representation of relative significance of a particular web site"—were "fundamentally subjective in nature." *Id.* at *3. Thus, because the website rankings constituted "constitutionally protected opinions," the court dismissed plaintiff's tort action challenging these rankings. *Id.* at *4.

So too here. Plaintiffs have alleged that Netratings's reduction in elpais.com's audience estimates by "more than one million unique visitors" and the downgrading of elpais.com "from the #1 to the #3 position in the rankings" has cost them advertising revenue and damaged their reputation. (Am. Cplt. ¶¶ 74-79.) Plaintiffs' challenge to this result is no different from that rejected in *Search King*. *See also Themed Rests.*, 801 N.Y.S.2d at 39-40 (Zagat survey restaurant rankings constitute constitutionally-protected opinion); *Compuware Corp.* v. *Moody's Investors Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007) (Moody's credit rating constitutes constitutionally-protected opinion).

Accordingly, consistent with the well-reasoned *Search King* opinion, as well as the rest of the relevant case law, the Court should dismiss Plaintiffs' claims as constitutionally invalid.

### III.

### PLAINTIFFS HAVE NOT PLEADED FACTS SUFFICIENT TO STATE ANY OF THEIR ALLEGED CLAIMS

To survive a motion to dismiss, the Supreme Court held last term, plaintiff must present "[f]actual allegations [that are] enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true."

*Bell Atl. Corp.* v. *Twombly*, 127 S. Ct. 1955, 1965 (2007) (citations and footnote

omitted).  The Court clarified that the pleading standard is more demanding than was

often applied, stating that Fed. R. Civ. P. 8(a) requires "not only 'fair notice' of the nature

of the claim, but also 'grounds' on which the claim rests." *Id*. at 1965 n.3.  A plaintiff

must plead "more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do." *Id*. at 1965.  There must be "enough *facts* to state a

claim to relief that is plausible on its face." *Id*. at 1974 (emphasis added).

  *Twombly* rejected as "best forgotten" the notion that a complaint should

not be dismissed unless it appears beyond doubt that a plaintiff "'can prove no set of facts

in support of his claim which would entitle him to relief.'" *Id*. at 1968-69 (quoting

*Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957)).  Rather, as the Second Circuit has

explained, the complaint is measured against a "plausibility standard," which obligates

the pleader "to amplify a claim with some factual allegations in those contexts where

such amplification is needed to render the claim *plausible*." *Iqbal* v. *Hasty*, 490 F.3d

143, 158 (2d Cir. 2007); *see also In re Xethanol Corp. Sec. Litig.*, No. 06 Civ. 10234

(HB), 2007 WL 2572088, at *2 (S.D.N.Y. Sept. 7, 2007).  This does not require "a

universal standard of heightened fact pleading," *Iqbal*, 490 F.3d at 157, but "it does

require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to

plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting

*Twombly*, 127 S. Ct. at 1974) (alteration in *Elevator Antitrust Litig.*)  And "'bald

contentions, unsupported characterizations, and legal conclusions are not well-pleaded

allegations' and will not defeat a motion to dismiss." *Williams* v. *N.Y. City Hous. Auth.*,

19

No. 05 Civ. 2750 (DC), 2007 WL 4215876, at *4 (S.D.N.Y. Nov. 30, 2007); *see Elevator Antitrust Litig.*, 502 F.3d at 51; *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

Plaintiffs have failed to plead sufficient facts to allege any of their claims. Along with the contractual and constitutional bars already discussed, the Amended Complaint should be dismissed in its entirety for this reason as well.

A.     **Each of Plaintiffs' Tort Claims Fails Because**
       **Plaintiffs Have Failed to Plead Actual Malice**

Even if the Court were to find that the allegedly "false and misleading estimations of the audience of elpais.com" at issue here did not constitute protected opinion, Plaintiffs' tort claims should nevertheless be dismissed because the Amended Complaint fails to plead "actual malice," as required by the federal and state constitutions.[7] *See N.Y. Times Co.* v. *Sullivan*, 376 U.S. 254, 279-80 (1964); *Themed Rests., Inc.* v. *Zagat Survey, LLC*, 781 N.Y.S.2d 441, 448-50 (Sup. Ct. 2004), *aff'd*, 801 N.Y.S.2d 38 (App. Div. 2005). Plaintiffs' conclusory, unsupported assertions that "Defendant is aware that its estimates of elpais.com's audience are inaccurate," that "Defendant leaked [these estimates] to Plaintiffs' competitors," and that Defendant had "no legitimate reason for leaking this information . . . other than to injure Plaintiffs and damage Plaintiffs' relationships with its clients" are simply insufficient to meet the pleading requirements of Fed. R. Civ. P. 8(a). *See Twombly*, 127 S. Ct. at 1965;

---

[7]     Despite Plaintiffs' assertions in Count Two of the Complaint, there is no claim for negligent interference with prospective economic advantage under New York law. *See Bishop* v. *Porter*, No. 02 Civ. 9542(JSR)(GWG), 2003 WL 21032011, at *12 (S.D.N.Y. May 8, 2003).

*Amadasu* v. *Bronx Lebanon Hosp. Ctr.*, No. 03 Civ. 6450 (LAK) (AJP), 2005 WL

121746, at *13 (S.D.N.Y. Jan. 21, 2005), *adopted*, No. 03 Civ. 6450 (LAK), 2005 WL

954916 (S.D.N.Y. Apr. 26, 2005), *aff'd*, 225 Fed. Appx. 32 (2d Cir. May 30, 2007);

*McNally* v. *Yarnall*, 764 F. Supp. 838, 851 (S.D.N.Y. 1991); (Am. Cplt. ¶¶ 81, 92, 96).

## B.    The Trade Libel Claim Fails Because Plaintiffs Have Failed Adequately to Allege Special Damages

To state a claim for trade libel under New York law, a complaint must

allege four elements: "(1) falsity of the alleged statements; (2) publication to a third

person; (3) malice; and (4) special damages." *Computech Int'l, Inc.* v. *Compaq

Computer Corp.*, No. 02 Civ. 2628, 2002 WL 31398933, at *5 (S.D.N.Y. Oct. 24, 2002).

Here, Plaintiffs have failed to satisfy the strict pleading requirements for special damages.

*See Kasada, Inc.* v. *Access Capital, Inc.*, No. 01 Civ. 8893 (GBD), 2004 WL 2903776, at

*16 (S.D.N.Y. Dec. 14, 2004); *see also* Fed. R. Civ. P. 9(g).

Indeed, recognizing that the allegations in their original Complaint did not

even come close to meeting these requirements, Plaintiffs have now appended to their

Amended Complaint a document entitled "Annex 1: Special Damages," which purports

(a) to list advertisers, potential advertisers, and advertising agencies from which

REDACTED

*First,*

REDACTED

21

REDACTION        (Taylor Decl. Ex. C at 2-6.)  This is plainly insufficient under

the law.  *See, e.g. Gucci Am., Inc.* v. *Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 277

(S.D.N.Y. 2003) (noting that to adequately allege special damages, "the persons who

cease[] to be customers must be named *and* the losses itemized" (emphasis in original)).

   *Second,*

REDACTED

              (Taylor Decl. Ex. C at 7 n.2.)  The

Amended Complaint thus fails to satisfy the requirement to "fully and accurately state[]"

all special damages, "with sufficient particularity to identify actual losses."  *Gucci*, 277 F.

Supp. 2d at 277; *see also John & Vincent Arduini Inc.* v. *NYNEX*, 129 F. Supp. 2d 162,

174 (N.D.N.Y. 2001) (noting requirement of pleading "the exact losses claimed").

**C.**  **The Amended Complaint Fails To State a Claim for**
    **Tortious Interference with Prospective Economic Advantage**

    Plaintiffs have also failed adequately to plead a claim for tortious

interference with prospective economic advantage.

    As courts have made clear, "[t]his cause of action has a 'limited scope,'"

and is "very difficult to sustain."  *Henneberry*, 2005 WL 991772, at *22.  Plaintiffs must

allege "(1) that they had a business relationship with a third party; (2) that [Nielsen] knew

of that relationship and intentionally interfered with it; (3) that [Nielsen] acted solely out

of malice or used wrongful means; and (4) that [Nielsen's] interference caused injury to

the relationship with the third party."  *Berwick* v. *New World Network Int'l*, No. 06 Civ.

2641 (JGK), 2007 WL 949767, at *14 (S.D.N.Y. Mar. 28, 2007).  Plaintiffs "also must

allege that [they] 'would have entered into an economic relationship but for the defendant's wrongful conduct.'" *Id.* And "[f]or purposes of the third element, wrongful means must as a general rule amount to 'a crime or an independent tort' unless the defendant has 'the sole purpose of inflicting intentional harm on [the] plaintiffs.'" *Id.*

Realizing that their original Complaint contained some rather glaring pleading deficiencies in this regard, Plaintiffs have now reworded a number of allegations in an attempt to avoid dismissal here. But even as revised in the Amended Complaint, Plaintiffs' allegations fall short of the "extremely high pleading standard" applicable to this claim. *Astor Holdings, Inc.* v. *Roski*, No. 01 Civ. 1905 (GEL), 2002 WL 72936, at *19 (S.D.N.Y. Jan. 17, 2002).

In particular, Plaintiffs now assert that Nielsen "intentionally published inaccurate and unreliable estimates of elpais.com's online audience," that it published these estimates to "the companies and advertising firms with whom Plaintiffs have, or could have, done business," and that Nielsen also "leaked" these estimates "to Plaintiffs' competitors" and did so for "no legitimate reason . . . other than to injure Plaintiffs and damage Plaintiffs' relationships with its clients." (Am. Cplt. ¶¶ 91-92.) The law is clear, however, that these sorts of conclusory allegations—with no factual basis at all to support them—are not sufficient to state a claim for tortious interference with prospective economic advantage. *See, e.g., Genal Strap, Inc.* v. *Dar*, No. 04 CV 1691 (SJ), 2005 WL 525547, at *3-4 (E.D.N.Y. Feb. 28, 2005).

Moreover, Plaintiffs have still failed to "specify some particular, existing business relationship through which [they] would have done business but for the allegedly tortious behavior." *Minn. Mining & Mfg. Co.* v. *Graham-Field, Inc.*, No. 96

23

Civ. 3839 (MBM), 1997 WL 166497, at *7 (S.D.N.Y. Apr. 9, 1997) (internal quotation marks omitted).

REDACTED

Indeed, at most, Plaintiffs' claim here amounts to unsupported and unspecified speculations and suspicions. It is well-settled, however, that "mere suspicions are inadequate to support a claim for tortious interference with business relations." *Henneberry* v. *Sumitomo Corp. of Am.*, 532 F. Supp. 523, 547 (S.D.N.Y. 2007) (internal quotation marks omitted). This claim should be dismissed.

**D.     Plaintiffs Fail to State a Claim for Negligent Misrepresentation**

Finally, the Amended Complaint fails to plead facts sufficient to state a claim for negligent misrepresentation. As this Court has held, to properly allege such a claim, Plaintiffs "must comply with the particularity requirements of Federal Rule of Civil Procedure 9(b)." *Phoenix Four, Inc.* v. *Strategic Res. Corp.*, No. 05 Civ. 4837 (HB), 2006 WL 399396, at *10 (S.D.N.Y. Feb. 21, 2006). They have failed to do so.

In particular, under New York law, a claim of negligent misrepresentation requires a "special relationship of trust or confidence between the parties." *Henneberry*, 532 F. Supp. 2d at 538 (internal quotation marks omitted). As discussed above, the relationship at issue here is instead one established by commercial contract, which is not sufficient to sustain a negligent misrepresentation claim. *See, e.g., JP Morgan Chase Bank* v. *Winnick*, 350 F. Supp. 2d 393, 401 (S.D.N.Y. 2004); *LaSalle Bank Nat'l Ass'n* v.

24

*Citicorp Real Estate Inc.*, No. 02 Civ. 7868 (HB), 2003 WL 1461483, at *3-6; *see also supra* pp. 3-4, 10-11.  Neither Plaintiffs' conclusory allegation that "[a] special relationship of trust existed" nor their bare assertion that they relied on Nielsen's "self-represented expertise in audience measurement" can defeat the motion to dismiss.  *See JP Morgan Chase*, 350 F. Supp. 2d at 402 (noting that where a party's expertise "amounts to nothing more than knowledge of the particulars of the company's business," that expertise "does not constitute the type of 'specialized knowledge' that is required to impose a duty of care in the commercial context"); *see also Twombly*, 127 S. Ct. at 1965.

## CONCLUSION

For the foregoing reasons, the Court should grant Nielsen's Fed. R. Civ. P. 12(b)(6) motion and dismiss all claims in Plaintiffs' Amended Complaint.  And because Plaintiffs amended their Complaint in response to Nielsen's original motion to dismiss, under Paragraph 4(A)(i) of the Court's Individual Practices, this dismissal should be with prejudice.

Dated: New York, New York
     April 17, 2008

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: _____

Leslie Gordon Fagen (lfagen@paulweiss.com)
Aidan Synnott (asynnott@paulweiss.com)
William J. Taylor, Jr. (wtaylor@paulweiss.com)

1285 Avenue of the Americas
New York, New York  10019-6064
(212) 373-3000

*Attorneys for Defendant The Nielsen Company (US), Inc.*

25