UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DIARIO EL PAIS, S.L. and PRISACOM, S.A.,

                Plaintiffs,

   -against-

THE NIELSEN COMPANY (US), INC.,

                Defendant(s)

------------------------------------------------------------x

07 Civ. 11295 (HB)

**STIPULATED ORDER ON
ELECTRONIC DISCOVERY**

[Stamp: USDS SDNY DOCUMENT ELECTRONICALLY FILED DOC #: ___ DATE FILED: 9/6/08]

## STIPULATED ORDER ON ELECTRONIC DISCOVERY

WHEREAS, in accordance with the pretrial scheduling order entered on March 27, 2008, the parties have come to certain decisions regarding disclosure and discovery of electronically stored information:

NOW THEREFORE, it is hereby AGREED and ORDERED that absent further stipulated agreement of the parties, the following protocol shall be in place regarding electronic discovery issues ("e-discovery"):

### I. INITIAL E-DISCOVERY DISCLOSURES.

On or before **August 12, 2008**, all parties[1] shall provide an Initial E-discovery Disclosures statement containing the following items in an effort to identify the likely scope of e-discovery. These disclosures may be supplemented and shall be reasonably complete no later than **August 26, 2008**.

---

[1] For the avoidance of doubt, as used in this Stipulated Order, the term "parties" means plaintiffs Diario El Pais, S.L. and Prisacom, S.A. and defendant The Nielsen Company (US), Inc.

    a.    a description of the steps that each party has taken to preserve the sources and locations of electronically stored information ("ESI")[2];

    b.    an initial list of persons reasonably expected to possess or control discoverable ESI ("Key Custodians"), including a brief description of each person's title and responsibilities and dates of employment;

    c.    a list of ESI from sources that the party identifies as not reasonably accessible because of undue burden or cost as well as a summary of why the source is not reasonably accessible. The non-disclosing party may request further information regarding specific ESI that the disclosing party has identified as not reasonably accessible. The disclosing party shall provide further information, to the extent reasonably possible, to assist the opposing party in evaluating the burden and cost to the disclosing party of providing the ESI and the likelihood of finding responsive information within the identified source. If the parties are unable to reach agreement regarding the scope and extent of further information provided by the disclosing party, either party may seek relief from the Court; and

    d.    a general description of the party's ESI and document retention policies and procedures.

## II.    FURTHER INFORMATION REGARDING E-DISCOVERY DISCLOSURES.

Following the initial E-discovery Disclosure, the parties shall, upon request, engage in a further exchange of information regarding their systems, their custodians and the locations of relevant information. This exchange of information regarding the E-discovery Disclosures shall be conducted through counsel. The intent of this exchange of information is to enable the parties to better identify and ascertain the appropriate scope of, and reasonable techniques for, the conduct of additional electronic discovery.

---

[2] For the avoidance of doubt, as used in this Stipulated Order, the term "ESI" means discoverable documents and data existing in electronic form in the broadest sense consistent with Fed. R. Civ. P. 34(a), including, without limitation, e-mail, word processing documents, spreadsheets, electronic slide presentation, databases, and other electronic data items containing information relevant to the claim or defense of any party to this litigation.

2

### III.     PRODUCTION METHODOLOGY.

The following provisions shall generally govern the format and procedure for producing ESI (other than databases).

    a.    *Format.*  Other than data extracted from databases (see below), the parties shall endeavor to produce ESI in a single page, black and white, dithered (if appropriate), Group 4 TIFF at 300 X 300 dpi resolution and 8½ X 11 inch page size, except for documents requiring different resolution or page size.  The parties shall not be required to produce any metadata in the first instance, but may make reasonable requests for the production of metadata on a document by document basis where necessary.  If at any time the producing party deems a requesting party's demand for native format documents to be excessive, the parties will meet and confer regarding the scope of this request.  If the parties cannot reach agreement, either party can seek relief from the Court.

    b.    *Appearance.*  Subject to appropriate redaction, each document's electronic image shall convey the same image as the original document.  Documents that present imaging or formatting problems shall be promptly identified; the parties shall meet and confer in an attempt to resolve any such problems.  If the parties cannot reach agreement, either party can seek relief from the Court.

    c.    *Document Unitization.*  A unitization file, in standard format (e.g., Opitcon, Summation DII) showing the Bates number of each page and the appropriate unitization of the documents, will accompany each TIFF document.  The unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in their original form.

    d.    *Color.*  If an original document contains color, each party shall honor reasonable requests from the other for either the production of an original document for inspection and copying or production of a color image of the document.

    e.    *"Bates Numbering."*  Except to the extent technologically infeasible, each page of a document produced in TIFF format shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image.

    f.    *Cross-Reference and ASCII Files.* The single page TIFF Group 4 images shall have a corresponding cross-reference file in IPRO (lfp) format with document and attachment flags. Additionally, the parties shall each produce a corresponding ASCII comma-delimited file containing the begin bates number, end bates number, begin attachment number, and end attachment number.

    g.    *Production Media.* The parties shall each endeavor to produce documents on CD-ROM, DVD, or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media (*e.g.*, "XXX Production July 1, 2008"), as well as the Production Media number in that production wave (*e.g.*, "DVD 1", "DVD 2"). Additional information that shall be identified on the physical Production Media includes: (1) text referencing that it was produced in this litigation; and (2) the Bates Number range of the materials contained on the Production Media. Further, any replacement Production Media shall cross-reference the original Production Media and clearly identify that it is a replacement and cross-reference the Bates Number range that is being replaced.

    h.    *Write Protection and Preservation.* All computer media that is capable of write protection should be write-protected before production.

    i.    *Native file format.* Except for databases, the parties shall not be required to produce any ESI in the first instance native format. A requesting party may make a request for native versions of specific documents, with the understanding that no party may seek to compel production of native format files of electronic documents on a wholesale basis. If at any time a producing party deems a requesting party's demand for native format documents to be excessive, the parties will meet and confer regarding the scope of this request. If the parties cannot reach agreement, either party can seek relief from the Court.

The following provisions shall generally govern the production format and procedure for ESI extracted from databases.

4

a. *Production Information.* Electronic records and computerized information from databases must be produced in an intelligible format or together with a technical description of the system from which they were derived sufficient to permit an intelligible rendering of the records and information.

b. *Continued Assistance.* Following the production of electronic data, the parties shall cooperate with each other and provide reasonable assistance to the receiving party in connection with the installation and use of such data and Software (see below).

c. *Format.* ESI produced from a database shall be provided in such machine-readable format and on such media as the parties may agree. To the extent the parties do not agree otherwise, the data shall be provided in an ASCII comma-delimited format. Media labeling conventions described above shall be followed to the extent feasible.

d. *Software.*

a. "Software" shall mean proprietary software or any other software not commercially available for purchase at retail stores in the United States, which is required to enable the receiving party to access and view any ESI from databases produced pursuant to this Stipulated Order. The parties shall not use Software produced for any purpose, commercial or otherwise, other than the prosecution or defense of these litigations. Any Software produced shall be treated as confidential information. At the conclusion of these litigations, such Software shall be returned to the producing party.

b. To the extent ESI from databases produced pursuant to this Stipulated Order cannot be rendered or viewed without the use of Software, the producing party shall assist the receiving party in obtaining authorization from any entity holding any patents or exclusive license to such Software. The party requesting the Software shall be responsible for

5

compliance with any applicable licensing or confidentiality requirements and for payment of any additional license fees that result from their use of the Software. The parties shall cooperate and attempt to minimize any expense or burden associated with the use of Software.

Should either the plaintiffs or the defendant seek to withhold any document based on some privilege, that party shall supply a list of the documents for which such limitation of discovery is claimed, indicating the following information:

    a.    The identity of each document's author, writer, sender;

    b.    The identity of each document's recipient or addressee;

    c.    The date of creation or transmittal indicated on each document, or an estimate of that date, indicated as such, if no date appears on the document or in meta-data information;

    d.    The general subject matter as described on each document, or, if no such description appears, then some other description sufficient to identify the document; and

    e.    The basis for any claim(s) of privilege (*e.g.*, "attorney-client privilege.").

Should any party not intending to make a disclosure inadvertently produce ESI subject to a claim of privilege, the producing party shall notify the other parties within a reasonable time that the produced information is subject to a claim of privilege, and the receiving parties shall promptly return, sequester or destroy the specified information and all copies. The parties agree that the provisions in the Stipulated Protective Order at paragraphs 14 and 15 apply to any circumstances in which a party inadvertently produces a privileged document (paragraph 15) or inadvertently fails to designate a document as "Confidential" (paragraph 14).

Should any party seek to redact any document based on one or more claims of privilege, that party shall supply a list of the documents for any such claim(s) of privilege, indicating the claimed grounds for the redaction. During the pendency of the litigation,

6

a copy of the original unredacted data shall be securely preserved in such manner so as to preserve without modification, alteration or addition the content of such data.

All computer media must be properly packaged to ensure safe shipping and handling. If any piece of media produced is known to have any physical defect, electronic defect, or damaged data, or is infected with any virus or other harmful software of any kind, it should be clearly labeled so that appropriate care can be taken during its examination.

The parties contemplate a rolling production of responsive, non-privileged documents and ESI. If requested, a producing party shall provide reasonably anticipated date(s) of completing its production or, if done on a rolling basis, the anticipated date of its next production installment.

### IV.  MEET AND CONFER OBLIGATIONS

In connection with the Production and Review Methodology discussed in Section III, and following the period of further exchange of information identified in Section II, the parties shall meet and confer regarding the following issues:

(1) refining further the sources of ESI that may reasonably contain discoverable information, taking into account appropriate objections under the Federal Rules of Civil Procedure,

(2) the manner in which the parties are preserving ESI and the need, if any, of modifications or additions to those means of preservation.

(3) the existence and preservation of back up tapes, cached data, residual data and fragmented data, as well as the need to preserve and search ESI which all parties can agree are corrupt or otherwise not reasonably accessible.

(4) the existence of other sources that may also be searched for responsive ESI, including (a) instant messaging communications; (b) voicemail systems, VOIP data, recordings of telephone conversations or other audio recordings; (c) web browser files; (d) personal digital assistants ("PDA"); and (e) mobile devices

7

including cellular phones and their ongoing obligations, if any, to preserve ESI that is maintained on such devices.

Until the Parties have completed their meet and confer sessions regarding these issues, they shall take reasonable steps to preserve ESI reasonably expected to contain discoverable information relevant to the claims in this action and within the possession, custody or control of all Key Custodians identified by the Parties. The meet-and-confer sessions discussed in this Section shall be completed no later than **September 15, 2008**. Subsequent to these meet and confer sessions, the Parties will undertake their mutual preservation, maintenance or preservation obligations with respect to ESI in accordance with their agreements established during these meet and confer sessions. If the parties are unable to agree on their mutual preservation, maintenance or production obligations with respect to ESI following these meet-and-confers, any party may seek relief from the Court.

### V.   PRESERVATION OBLIGATIONS

As part of their existing document preservation obligations, the parties shall take reasonable steps to preserve all ESI created after **December 17, 2007** that relates to communications or contacts between Diario El Pais, Prisacom and Nielsen ("Future Records"). Without restricting the freedom to use reasonable alternative methods, a party will be considered to have acted reasonably to preserve such Future Records if it (1) instructs its Key Custodians to retain such Future Records and takes reasonable steps to provide Key Custodians with support in implementing such instruction, and (2) periodically collects and preserves copies of any such Future Records as identified by the Key Custodians.

The parties shall not have any obligation to preserve Future Records that would not be preserved in the ordinary course of business.

8

## VI.    ADDITIONAL ISSUES

a. *Onsite Inspections.*   On-site inspections of electronic media under Fed. R. Civ. P. 34(b) shall not be permitted, except on mutual agreement of the parties, or upon ruling of the Court.

b. *Authentication.*   To the extent necessary, the parties shall meet and confer to develop appropriate provisions for authenticating ESI produced hereunder, and for using such at deposition or in any other evidentiary manner, subject to the provisions of the Protective Order, including but not limited to procedures for the identification of production numbers associated with data produced in electronic form and reproduced for use at deposition or trial.   Except as the parties may further agree, this Paragraph VI.b shall not apply to the use at deposition of paper copies of documents produced in electronic format.

c. *Cooperation.*   The parties shall, as necessary, meet and confer to exchange information regarding issues associated with any production of ESI, including but not limited to identification of redaction software and procedures, database field definitions and structure or document delivery mechanisms.

d. *Variance.*   Any practice or procedure set forth herein may be varied by agreement of the parties, and by written confirmation, where such variance is deemed appropriate to facilitate the timely and economical exchange of ESI.

e. *Duplicate Production Not Required.*   A party producing ESI in electronic form need not produce the same document in a paper format and vice versa.

Jointly submitted on this 31st day of July 2008 by:

| | |
|---|---|
| HOWREY LLP<br>153 East 53rd Street, 54th Floor<br>New York, New York 10022<br>*Attorneys for Plaintiffs* | PAUL, WEISS, RIFKIND, WHARTON &<br>GARRISON LLP<br>1285 Avenue of the Americas<br>New York, New York  10019<br>*Attorney for Defendant* |
| By: *[signature]*<br>William O. Purcell<br>Ethan E. Litwin | By: *[signature]*<br>Leslie Gordon Fagen<br>Aidan Synnott<br>William J. Taylor, Jr. |

ENTERED this ___ day of August 2008.

*[signature]*
Honorable Harold Baer, Jr.
UNITED STATES DISTRICT COURT JUDGE